**COLT'S MANUFACTURING COMPANY,**
Petitioner-Appellant,

v.

**COMMISSIONER OF INTERNAL REVENUE,** Respondent-Appellee.

No. 361, Docket 27250.

United States Court of Appeals
Second Circuit.

Argued June 5, 1962.

Decided Aug. 20, 1962.

Herbert R. Berk, New York City (Richard A. Osserman, Warren F. Schwartz, Weisman Allan Spett & Shein-berg, New York City, on the brief), for petitioner-appellant.

Benjamin M. Parker, Attorney, Department of Justice, Washington, D. C. (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson and Harry Marselli, Attorneys, Department of Justice, Washington, D. C., on the brief), for respondent-appellee.

Before CLARK, WATERMAN and MOORE, Circuit Judges.

LEONARD P. MOORE, Circuit Judge.

Colt's Manufacturing Company (Colt's) appeals from a judgment of the Tax Court (35 T.C. No. 78), three judges dissenting, determining a statutory deficiency in excess profits tax for 1952 in the amount of $42,523.93.

The dispute between the taxpayer and the Commissioner is whether certain treasury stock acquired by Colt's from its stockholder should be considered as "invested capital" and within the definition of "equity capital" as defined in the Excess Profits Tax Act of 1950, Section 437, 26 U.S.C. (1952 ed.) § 437. The facts relating to the acquisition of the treasury stock are determinative of its status as an "asset" and whether it was being held "in good faith for the purposes of the business."

Colt's a Connecticut corporation in the small firearms business, prospered during World War II. After the war it found itself with surplus cash and other liquid assets in excess of $7,500,000. Unsuccessful in finding any profitable use for this large surplus and pressed by a group of stockholders for a distribution, Colt's directors adopted a plan for the solicitation of tenders of stock at a price not to exceed $53 a share. A notice of a special meeting of stockholders (March 6, 1950) to act upon the plan was given which contained the statement:

"In view of the Company's strong capital position the Board of Directors during the past year has explored merger and expansion possibilities with diligence. It has become evident, however, that this

capital position is not a dominant factor in effecting an acceptable consolidation and no satisfactory expansion program has been developed. Consequently the Board has concluded that the purchase by the Company of outstanding shares of its capital stock to an extent which would not interfere with the carrying on of its normal operations would be in the best interests of the Company and would accord to stockholders an opportunity either to sell their shares to the Company for cash or, by not selling, to increase their proportionate equity in the Company.

\* \* \* \* \* \*

"In purchasing shares tendered, the Company in no event will expend in excess of $7,000,000 and in no event in excess of a sum which would reduce the operating capital of the Company below an amount adequate for its normal operations."

The plan was adopted by the stockholders on March 29, 1950. Thereunder 124,827 of the 195,900 shares outstanding were tendered and redeemed at a cost to the company of $6,524,167.82. Colt's authorized capital stock consisted of 400,000 shares of which 200,000 shares had been issued. After the acquisition of the 124,827 shares and an additional block of 4,100 shares (originally intended for employee participation purposes) at an aggregate cost for both blocks of $6,653,174, there remained outstanding as of December 31, 1950, as shown in Colt's statement for 1950, 71,073 shares with a "Stockholders Ownership" value of $7,165,776. Of the 128,927 shares of treasury stock, 8,927 were used on July 18, 1951, to acquire the assets of Walter P. Jacobs Industries, Inc. and the remaining 120,000 shares were retired on December 18, 1952.

At all times Colt's in its books recorded the reacquired stock as "treasury stock" and did not regard it as an asset or a liability. These shares were not voted and no dividends were paid thereon.

In computing Colt's "excess profits credit" for 1952, Colt's selected the method "Based on Invested Capital" (Sec. 436) which defines the credit in substance as the invested capital credit as computed under section 437 reduced by the amount computed under section 440 (b) relating to inadmissible assets. Excluding the treasury stock from both assets and inadmissible assets and using the table set forth in section 437, Colt's arrived at a "Net Excess Profit Credit" of $1,187,086.64. The Commissioner included the treasury stock under assets and inadmissible assets with a resulting figure of $1,040,671.31.[1]

Section 437 in an effort to define "Invested Capital" defines it as "adjusted invested capital determined under paragraph (2)." That paragraph in turn defines "adjusted invested capital" as the sum of "equity capital" plus other items not here involved. The search for a definition finally ends with the disclosure in paragraph (c) that "The equity capital of the taxpayer as of any time

1. *The computations may be summarized briefly as follows:*

| Colt's | Commissioner |
|---|---|
| *Total Assets:*<br>(per return)<br>$11,089,854.92 | *Total Assets:*<br>(including cost of redeemed shares)<br>$17,202,381.36 |
| *Tentative Credit:*<br>$1,187,188.39 | *Tentative Credit:*<br>$1,676,190.51 |
| *Less:*<br>Reduction on account of inadmissible assets<br>$101.75 | *Less:*<br>Reduction on account of inadmissible assets,<br>$635,519.20 |
| *Net Excess Profit Credit:*<br>$1,187,086.64 | *Net Excess Profit Credit:*<br>$1,040,671.31 |

shall be the total of its assets held at such time in good faith for the purposes of the business, reduced by the total of its liabilities at such time."

The first question to be resolved is: Is the treasury stock an asset? If so, the second question arises: Was it held "in good faith for the purposes of the business"?

Counsel for the Commissioner conceded "that accounting-wise this stock we have reference to is not an asset." An accountant whose qualifiations as an expert were acknowledged by the Commissioner's counsel testified that proper accounting treatment of reacquired shares set up as treasury stock was "to take that item off the equity side"; that it should be deducted from the capital stock or surplus; and that it "should not be carried as an asset on the asset side of the balance sheet." The Securities and Exchange Commission in its regulations forbids corporations from treating reacquired shares as assets. Regulation S-X, Rule 3-16, provides:

"Reacquired shares shall be shown separately as a deduction from capi-

tal shares, or from the total of capital shares and surplus, or from surplus, at either par or stated value, or cost, as circumstances require."

Even the Commissioner's Regulation 130, Sec. 40.458-5(e) and Regulation 130, Sec. 40.437-1(b) (1) read, respectively, "the purchase by a corporation of its own stock *for investment* does not of itself result in a reduction of invested equity capital" and "treasury stock purchased *for investment* * * * is included in total assets" (emphasis supplied). Thus, significance is given to the "for investment" character of the purchase.

Looking at the transaction realistically, after it completed its acquisition of the 124,827 shares, Colt's had some $6 million in cash less than before the purchase. Whereas before the acquisition the cash represented a real asset which if it had had any need therefor could have been used to purchase income producing properties, after the acquisition all that Colt's had were the paper stock certificates which could not generate any earning power unless resold or used to obtain other properties.[2] To this extent the

2. The position taken by the Commissioner in his brief in Christman Co. v. C. I. R., 6 Cir., 1948, 166 F.2d 1016, was sound. He clearly stated the reasons for not regarding reacquired stock under analogous circumstances as an asset in the following passages therefrom:

"Accordingly, the isolated reacquisition of comparatively small amounts of shares of a corporation's stock might reasonably be held not to result in a reduction of invested capital, but such view could certainly not be taken in this case where the reacquisition of shares in substantial blocks aggregated much more than one-half of the total capital stock of the taxpayer, under circumstances which, when viewed rationally and practically, clearly indicate that the capital invested in the business was reduced.

*    *    *    *    *

"The view we have just expressed is supported, we believe, by cases which recognize that, even where reacquired stock is carried on the books as 'treasury stock', it may nevertheless be regarded as 'redeemed' for the purpose of a provision of a tax statute if that conclusion

is warranted by the attendant circumstances.

*    *    *    *    *

"Obviously, to allow the inclusion in equity invested capital of amounts originally 'paid in' for stock which have later been 'paid back', so to speak, by means of reacquisition of stock such as took place in this case, would appear to be clearly contrary to the legislative policy of allowing a credit from the excess profits tax based upon the amount of capital 'being risked' in the business.

*    *    *    *    *

"If part of the money originally 'paid in' for stock has been subsequently 'paid back' through the reacquisition of stock, it is clearly no longer *invested* in the business, and it would be an anomalous result to allow it to be included in equity invested capital under Section 718 of the Code and thus allow it to be regarded as capital invested in the business.

*    *    *    *    *

"As aptly observed by the member of the Tax Court at the close of the hearing in this case, that portion of the money 'paid in' which has been 'paid back' to the

**932**

treasury stock was in the same position as authorized but unissued stock. It could only attain the status of an asset when sold and when the proceeds were received by the corporation.

The proof is clear that Colt's search for profitable uses for its cash had met with no success. Thus there is no reason for surmise that it contemplated using its treasury stock for such a purpose. Nor is there room for inference that the stock was acquired or held "for investment" since no dividends or other income would be received therefrom and no plans for its resale were contemplated prior to its acquisition or during its retention. Furthermore, the motivating reasons for the purchase belie any "for investment" theory. Even the Tax Court majority agreed "that to the extent it was not purchased with the intent to resell it at a profit, the stock was not purchased for investment purposes." And if the stock were not purchased "for investment" it could scarcely find its way to the asset side of the ledger.

With respect to the requirement of Section 437(c) that the equity capital include assets "held at such time in good faith for the purposes of the business," even if the stock were not so acquired originally, was the stock then being "held" for such purpose? There is no proof in the record which would support such a finding. The use of 8,927 shares out of 128,927 shares in 1951 to acquire the assets of Walter P. Jacobs Industries, Inc., was not related by any proof to the stockholder purchase plan of May, 1950. Except for this apparently isolated transaction, Colt's did not trade in the stock, attempt to sell it or to use it for merger or other business purposes. In fact, the contrary is shown by its action in retiring the entire 120,000 (128,927 less the 8,927) shares in December, 1952, the tax year here in question.

■ The Commissioner argues that Section 440(a) (1) (A) defines "inad-

missible assets" as "Stock in corporations, except stock in a foreign personal holding company, and except stock which is not a capital asset;". From this paragraph, the Commissioner concludes that the stock must be an "inadmissible asset." However, the paragraph does not refer to treasury stock. A more reasonable interpretation is that the provision includes only treasury stock which comes within the "invested capital" definition. Furthermore, to become "inadmissible" the stock should have attributes of inadmissibility, namely, an included asset which did not produce excess profits income. And if the stock were held for the business purposes ascribed to it by the Commissioner, it would scarcely qualify as inadmissible. Therefore, the conclusion must be reached that Colt's was correct in not regarding the treasury stock in question in the categories of assets or inadmissible assets and that Colt's tax for 1952 should be computed on the basis of the excess profit credit as reported by it.

■ After the Tax Court's decision, Colt's submitted a "Computation for Entry of Decision," stating the statutory deficiency as $42,523.93 and claiming credit for various payments including a payment of $44,979.85 made on August 25, 1955. This payment together with previous payments resulted in an overpayment of $2,455.92. The Commissioner credited the $44,979.85 payment as of December 3, 1956, claiming that this amount was not assessed until that date. Because of this fact he concludes that no overpayment can exist until the assessment or allocation of the amount to the payment of a tax, citing Rosenman v. United States, 323 U.S. 658, 65 S.Ct. 536, 89 L.Ed. 535 (1945). Colt's argues that the effect of the Rosenman case was nullified by the enactment of Section 3770(c) of the Internal Revenue Code of

stockholders 'no longer is paid in to the corporation; it is gone. The corporation had it for a while, but now in the taxable years it does not have it any more'."

1939, 26 U.S.C. (1952 ed.) § 3770(c), which provides:

"Rule where no tax liability. An amount paid as a tax shall not be considered not to constitute an overpayment solely by reason of the fact that there was no tax liability in respect of which such amount was paid."

The Tax Court found that the overpayment was made after the mailing of the notice of deficiency but declined to fix the precise date thereof stating that the Court had no jurisdiction over the amount of interest on the overpayment. It seems clear that the date of payment was August 25, 1955, and that interest should run from that date.

The decision of the Tax Court is reversed and the case remanded to the Tax Court for computation pursuant to Rule 50, 26 U.S.C. § 7453.