**Tedroe J. FORD, Jr. and Margaret Ford, Plaintiffs-Appellees,**

**v.**

**UNITED STATES of America, Defendant-Appellant.**

**No. 78-2251.**

United States Court of Appeals, Fifth Circuit.

June 5, 1980.

John H. Hannah, Jr., U. S. Atty., Tyler, Tex., M. Carr Ferguson, Asst. Atty. Gen., Gilbert E. Andrews, Chief, App. Sec., William S. Estabrook, III, Aaron P. Rosenfeld, Tax Div., Dept. of Justice, Washington, D. C., for defendant-appellant.

Allen E. Pye, Tyler, Tex., for plaintiffs-appellees.

Before THORNBERRY, FRANK M. JOHNSON, Jr. and HENDERSON, Circuit Judges.

FRANK M. JOHNSON, Jr., Circuit Judge:

Taxpayers Tedroe and Margaret Ford brought suit against the United States in the District Court for the Eastern District of Texas seeking refund of federal income taxes and interest for 1970 and 1971. The Court denied the Government's motion to dismiss the litigation for lack of subject matter jurisdiction and, because the United States tendered no defense on the merits, entered judgment in favor of the Fords for $7,195.81 with interest.[1] The United States appeals. Despite our view of Supreme Court precedent, the course taken by our sister circuits, and appropriate tax policy, we are constrained, no less than was the District Court, by the bonds of *Thomas v. Mercantile National Bank at Dallas*, 204 F.2d 943 (5th Cir. 1953) (*Mercantile National Bank*). Accordingly, we affirm.

On April 3, 1974, the Internal Revenue Service sent the Fords a statutory notice of deficiency informing them that, according to Service calculations, they had underpaid income taxes for 1970 and 1971. In response to the notice, on June 6, 1974, the Fords remitted to the IRS $8,441.24. Not until August 19, 1974, however, did the Service formally assess the deficiency.[2] On August 9, 1976, the Fords filed claims for refund of the moneys sent to the Service in June, 1974. The IRS disallowed the claims and the Fords initiated the present litigation.

Section 7422(a) of the Internal Revenue Code of 1954, 26 U.S.C. § 7422(a), prohibits any "suit or proceeding . . . in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected . . . until a claim for refund or credit has been duly filed . . . according to the provisions of law . . . .." Those "provisions of law," however, establish a limitations period for the assertion of refund claims:

Claim for credit or refund of an overpayment of any tax imposed by this title in respect of which tax the taxpayer is required to file a return shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later . . . . .

I.R.C. § 6511(a), 26 U.S.C. § 6511(a).

No credit or refund shall be allowed or made after the expiration of the period of limitation prescribed in [section 6511(a)] for the filing of a claim for credit or refund, unless a claim for credit or refund is filed by the taxpayer within such period.

I.R.C. § 6511(b)(1), 26 U.S.C. § 6511(b)(1).

The sole question on appeal is whether the Fords filed their refund claims within two years after they "paid" the tax. The Government asserts that because more than two years elapsed between receipt of the money on June 6, 1974, and assertion of the claim on August 9, 1976, the District Court erred in not dismissing the suit for lack of subject matter jurisdiction. The Fords urge that, since they filed refund claims within two years of the formal assessment of the deficiency, they met the requirements of section 6511. The law of this Circuit requires us to accept the Fords' position.

In 1953, *Mercantile National Bank*, *supra*, presented this Court with a factual situation closely analogous to that involved here. The disposition of that case controls our determination of when the Fords "paid" their taxes within the meaning of section 6511(a). In *Mercantile National Bank*, the IRS notified the taxpayer of a proposed estate tax deficiency and the taxpayer responded with a check for the exact amount. As with the Fords, the money was credited

---

1. Of the judgment, $2,706.76 was attributable to 1970 tax overpayment and $4,489.05 concerned 1971 taxes. The judgment also included interest on the amount from June 6, 1974.

2. The IRS computed the total amount of tax and interest to be $7,195.81 and on September 16, 1974, refunded $1,245.43 to the Fords.

to the taxpayer's account. However, the formal deficiency assessment was not entered until some time after the Government received the money. Moreover, also similar to the present situation, the claim for refund was filed within the limitations period only if the tax was deemed "paid" as of the date of formal assessment rather than at the time the check was received. 204 F.2d at 943–44. The *Mercantile National Bank* Court relied upon *Rosenman v. United States*, 323 U.S. 658, 65 S.Ct. 536, 89 L.Ed. 535 (1945) and held that, until formal certification of the tax assessment list, no tax could have been paid because until then there was no tax liability.

Until the Commissioner certified the assessment list . . . there was no deficiency assessment, and no liability on the part of the taxpayer, and consequently nothing to pay. The sum deposited with the Collector [earlier] was merely an advance deposit to cover additional tax liability expected to arise thereafter. Neither the estate's liability, nor the fact that there was an overpayment, could be determined until the deficiency assessment was entered. It would be illogical to hold, as the United States contends, that the statute of limitation began to run against a claim for refund before the deficiency itself came into existence, and before the fact that there was an overpayment, and if so the amount thereof, became ascertainable.

204 F.2d at 944.

Notwithstanding the declaration of the *Mercantile National Bank* Court, we think it not at all illogical to posit circumstances in which payment of tax occurs before formal assessment of deficiency. Supreme Court authority does not preclude such a result and other courts of appeals have not followed an unbending rule that preassessment tax remittances never constitute payment of tax. Moreover, recognition of the realities of the American taxing system reveals that under most situations tax is paid with no coercive involvement of the federal tax authorities whatsoever.

The *Mercantile National Bank* Court phrased its holding as if the result were required by *Rosenman v. United States, supra.* 204 F.2d at 944. As we read *Rosenman*, however, that case did not necessarily dictate the disposition of *Mercantile National Bank*. In *Rosenman*, the petitioners, faced with an absolute deadline for the payment of estate taxes, delivered to the Collector of Internal Revenue a check for $120,000, " 'as a payment on account of the Federal Estate tax. . . . This payment is made under protest and duress, and solely for the purpose of avoiding penalties and interest, since it is contended by the executors that not all of this sum is legally or lawfully due.' " 323 U.S. at 660, 65 S.Ct. at 537. The United States asserted that the tax was "paid" when the executors delivered the money and, therefore, the claim for refund was time barred. 323 U.S. at 662, 65 S.Ct. at 538. The Court disagreed, however, holding that, when the executors remitted the money to the Government, "the taxpayer did not discharge what [was] deemed [to be] a liability nor pay one that was asserted. There was merely an interim arrangement to cover whatever contingencies the future might define. The tax obligation did not become defined until [the deficiency was assessed]." *Id.*

Nevertheless, "*Rosenman* does not foreclose treating as a tax payment a remittance made prior to assessment." *Fortugno v. Commissioner*, 353 F.2d 429, 435 (3d Cir. 1965), *cert. dismissed*, 385 U.S. 954, 87 S.Ct. 337, 17 L.Ed.2d 302 (1966). Although the *Mercantile National Bank* Court found that the remittance was made "to forestall the accrual of interest on any deficiency that might be entered," 204 F.2d at 943, in *Mercantile National Bank* there was no "letter of protest" disputing tax liability. Moreover, there was no explicit "arrangement" made to deal with future uncertainties. Most important, it is not at all clear that the taxpayer in *Mercantile National Bank*, in responding to the proposed deficiency with a check for the exact amount, did not "discharge what he deemed a liability [or] pay one that was asserted." 323 U.S. at 662, 65 S.Ct. at 538.

Although in 1956 the Court of Appeals for the Eighth Circuit followed the *Mercantile National Bank* per se rule, *United States v. Dubuque Packing Co.*, 233 F.2d 453, 460–62 (8th Cir. 1956), nearly every other court considering the question of when tax was "paid" has adopted a course in conflict with that rule. *See Ameel v. United States*, 426 F.2d 1270, 1272–73 (6th Cir. 1970); *Fortugno v. Commissioner, supra*, 353 F.2d at 435; *United States v. Miller*, 315 F.2d 354, 358 (10th Cir.), *cert. denied*, 375 U.S. 824, 84 S.Ct. 335, 11 L.Ed.2d 267 (1963); *Colts' Mfg. Co. v. Commissioner*, 306 F.2d 929, 932–33 (2d Cir. 1962); *Hill v. United States*, 263 F.2d 885, 887 (3d Cir. 1959); *Rose v. United States*, 256 F.2d 223, 226–27 (3d Cir. 1958); *Lewyt Corp. v. Commissioner*, 215 F.2d 518, 522–23 (2d Cir. 1954), *aff'd in part, rev'd in part on other grounds*, 349 U.S. 237, 75 S.Ct. 736, 99 L.Ed. 1029 (1955); *Richardson v. Smith*, 196 F.Supp. 432, 433 (E.D.Pa.1961), *aff'd per curiam*, 301 F.2d 305 (3d Cir. 1962); *Northern Natural Gas Co. v. United States*, 354 F.2d 310, 315–16, 173 Ct.Cl. 881 (1965); *Charles Leich & Co. v. United States*, 329 F.2d 649, 653, 165 Ct.Cl. 127 (1964). The great weight of authority indicates that an examination of taxpayer intent has been an important factor in determining whether a remittance is "payment" of tax. *See Ameel v. United States, supra*, 426 F.2d at 1273; *Fortugno v. Commissioner, supra*, 353 F.2d at 435–36; *United States v. Miller, supra*, 315 F.2d at 358–59; *Hill v. United States, supra*, 263 F.2d at 887; *Rose v. United States, supra*, 256 F.2d at 226–27; *Lewyt Corp. v. Commissioner, supra*, 215 F.2d at 522–23; *Richardson v. Smith, supra*, 196 F.Supp. at 433; *Northern Natural Gas Co. v. United States, supra*, 354 F.2d at 315–16; *Charles Leich & Co. v. United States, supra*, 329 F.2d at 653. As the Court of Appeals for the Third Circuit stated in *Fortugno v. Commissioner, supra*, "payment means the satisfaction of an asserted tax liability, and

. . . an effective satisfaction depends on the *agreement* of the taxpayer and the Government that a tax liability is being discharged." 353 F.2d at 435 (emphasis added). Where the taxpayer continues to contest tax liability for remittances, " 'contest,' coupled with the fact of no assessment, [is] sufficient to negate 'payment' . . . ." *Charles Leich & Co. v. United States, supra*, 329 F.2d at 653; *see Ameel v. United States, supra*, 426 F.2d at 1273; *Fortugno v. Commissioner, supra*, 353 F.2d at 435–36; *Hill v. United States, supra*, 263 F.2d at 887; *Rose v. United States, supra*, 256 F.2d at 227; *Lewyt Corp. v. Commissioner, supra*, 215 F.2d at 522–23; *Northern Natural Gas Co. v. United States, supra*, 354 F.2d at 315. "[A]n essential factor in 'payment' before assessment is the satisfaction or discharge of what the taxpayer deems liability." 10 J. Mertens, Law of Federal Income Taxation § 58.27 (rev. ed. 1976). We think that an analysis of taxpayer intent comports not only with the requirements of *Rosenman* but also with the policy of fostering voluntary compliance with tax obligations.[3]

■ The *Mercantile National Bank* per se rule, however, contradicts a concept basic to our taxing system, the concept of voluntariness. Ideally our taxing system is a voluntary one, dependent for compliance in large part upon a sense of civic duty. The system has been described as one of "self-assessment." *Macatee, Inc. v. United States*, 214 F.2d 717, 720 (5th Cir. 1954); Procedural Rules of the Internal Revenue Service, 26 C.F.R. § 601.103(a) (1979). The principle is a part of the Internal Revenue Code. Whenever tax returns are required to be filed, the taxpayer's obligation is to pay the tax shown due on the return with neither notice from nor assessment by the Service. I.R.C. § 6151(a), 26 U.S.C. § 6151(a). The rule of *Mercantile National Bank*, that absent formal assessment of a tax deficiency

**3.** The Government urges that the intent of the taxpayer at the time of remittance is irrelevant to the consideration whether the moneys constitute tax "payment." We disagree; to disregard taxpayer intent is to place the assertion of tax liability as the sole determinant. *Rosenman v. United States, supra*, 323 U.S. at 662, 65

S.Ct. at 538 and more recent authorities contemplate that for "payment" the remittance should be in satisfaction of what the taxpayer "deems" a liability. There is less support for the Government's position than for the hard-and-fast rule of *Mercantile National Bank*.

there can be no payment of tax, undermines this principle. The per se rule ignores the realities of the taxing system in favor of reference to the occurrence of an administrative act.

■ Notwithstanding our apprehension concerning the per se assessment rule and our conviction that an analysis based on taxpayer intent better serves tax policy objectives, we are not relieved of the duty to follow *Mercantile National Bank* as the law of the Circuit. As a panel of this Court, we are without power to overrule a decision of another panel. That task falls solely to the full Court sitting *en banc*. *Trunkline Gas Co. v. Federal Energy Regulatory Comm'n*, 608 F.2d 582, 583 (5th Cir. 1979); *Williams v. Blazer Financial Services, Inc.*, 598 F.2d 1371, 1374 (5th Cir. 1979); *United States v. Houde*, 596 F.2d 696, 704 (5th Cir. 1979); *Lee v. Frozen Food Express, Inc.*, 592 F.2d 271, 272 (5th Cir. 1979); *Puckett v. Commissioner*, 522 F.2d 1385, 1385 (5th Cir. 1975). The Government concedes that, if *Mercantile National Bank* retains any vitality, that case controls disposition of the present appeal. We agree.[4] Although we invite *en banc* consideration of a rule we believe not justified by Supreme Court precedent, the practice of other courts, or the realities of our tax system, we must adhere to that rule.[5]

AFFIRMED.

**4.** *Rosenman* and *Mercantile National Bank* both involved the question of payment of estate tax. At issue here is when payment of income taxes occurred. Nevertheless, since the *Rosenman* decision, analysis of when tax payment was made has not depended upon the context in which the issue arose. *Rosenman v. United States, supra*, 323 U.S. at 663; *see Binder v. United States*, 590 F.2d 68, 72 (3d Cir. 1978) (Weiss, J., dissenting) (income tax); *Fortugno v. Commissioner, supra*, 353 F.2d at 435 (income tax); *Colts' Mfg. Co. v. Commissioner, supra*, 306 F.2d at 932 (income tax); *Budd Co. v. United States*, 252 F.2d 456, 460 (3d Cir. 1957) (income tax); *Lewyt Corp. v. Commissioner, supra*, 215 F.2d at 519, 522–23 (income tax); *Northern Natural Gas Co. v. United States, supra*, 354 F.2d at 315 (income tax).

**5.** If we were free to discard the absolute rule of *Mercantile National Bank* and adopt a rule focussing on taxpayer intent, we would remand

for findings of fact regarding the intent of the Fords in making the remittance to the IRS. We note, however, that in brief taxpayers assert that their refund claims for 1970 and 1971 involve the question of whether certain trust income was properly attributable to them, to their children, or to the trust. According to the Fords, their litigation with the Government over the same income for 1968 and 1969 was not yet resolved when, in response to the proposed deficiency, they remitted the money at dispute here. Shortly after prevailing in the litigation concerning 1968 and 1969 taxes, the Fords filed claims for refund of the sums covering 1970 and 1971. Litigation of the issue for 1968 and 1969 might well be sufficient to indicate an intent to contest liability for the 1970 and 1971 taxes. *Charles Leich & Co. v. United States, supra*, 329 F.2d at 653.