Troy W. OTT, Plaintiff–Appellant,

v.

UNITED STATES of America, Defendant–Appellee.

No. 96–36168.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 6, 1998.

Decided April 15, 1998.

Arthur Boelter, Boelter & Associates, Seattle, Washington, for plaintiff-appellant.

Bridget Rowan, Department of Justice, Washington, DC, for defendant-appellee.

*commm. on Courts, Civil Liberties, and the Administration of Justice,* 97th Cong. at 13 (1982).

Before: SCHROEDER, ALARCON and HAWKINS, Circuit Judges.

SCHROEDER, Circuit Judge:

Taxpayer Troy Ott appeals the district court's summary judgment in favor of the United States in Ott's action seeking a refund for tax year 1986. The district court concluded that Ott's action was time-barred because Ott had "paid" his tax when he submitted a remittance with his request for an automatic extension of time to file his return. The issue is therefore whether a remittance accompanying Treasury Form 4868 constitutes a payment rather than a deposit for purposes of the statute of limitations on a claim for refund. This court has not previously addressed the issue and there is a division among the circuits. We agree with the decisions in *Gabelman v. Commissioner,* 86 F.3d 609 (6th Cir.1996) and *Weigand v. United States,* 760 F.2d 1072 (10th Cir.1985), which are well reasoned and consistent with our circuit law.

On April 9, 1987, Ott submitted to the IRS a timely Form 4868, requesting an automatic four-month extension to file his 1986 tax return. The form required Ott to declare his "[t]otal income tax liability for 1986" and "pay in full." The applicable Treasury regulation provides that "the application for extension must show the full amount properly estimated as tax for such taxpayer for such taxable year, and such application must be accompanied by the full remittance of the amount properly estimated as tax which is unpaid as of the date prescribed for the filing of the return." 26 C.F.R. § 1.6081–4(a)(4) (1987). Ott declared a tax liability of $25,000 and remitted a check in that amount with a memo line reading "1986 taxes." Ott did not file his return within the four month extension period, nor did he request an additional extension under 26 C.F.R. § 1.6081–1. Instead, Ott filed the 1986 return six years late, in August of 1993. The return showed taxes

due in the amount of $14,900, and Ott requested a refund of $10,100.

The IRS denied Ott's claim for refund as time-barred under 26 U.S.C. § 6511, which establishes a two-year statute of limitations from the time the tax is "paid" if the taxpayer did not file a timely return. Ott filed suit in the district court, claiming the IRS had improperly calculated the date of tax payment for purposes of § 6511. Ott argued that his $25,000 remittance in April 1987 was merely a deposit against potential liability. He claimed that he did not "pay" the taxes until he filed his return in August of 1993. The court agreed with the IRS that the April 1987 remittance constituted a payment of 1986 taxes rather than a deposit. We affirm.

■ If a taxpayer has filed a valid return, his claim for refund must be filed "within three years from the time the return was filed or two years from the time the tax was paid, whichever of such periods expires the later." 26 U.S.C. § 6511(a). Because Ott's 1987 return was not timely, it does not qualify as a valid return under § 6511(a). *See Miller v. United States,* 38 F.3d 473, 475 (9th Cir.1994). In order to prevail, Ott must have filed his claim for refund within two years from the time tax was paid. If the April 1987 remittance was a payment, then Ott's claim for refund is time-barred. If the April 1987 remittance was merely a deposit and the payment was instead made at the time Ott filed his return in August 1993, then Ott's claim for refund is timely.

The leading authority in the area is *Rosenman v. United States,* 323 U.S. 658, 65 S.Ct. 536, 89 L.Ed. 535 (1945), which has created considerable confusion. It involved a complicated, individualized set of circumstances because it was decided before the IRS adopted the automatic extension procedure of Form 4868. In *Rosenman,* estate executors submitted a check for $120,000 to the IRS in 1934, with a letter stating: "This payment is made under protest and duress, and solely for the purpose of avoiding penalties and interest, since it is contended by the executors that not all of this sum is legally or lawfully due." *Id.* at 660, 65 S.Ct. at 537. The Collector placed this amount in a suspense account to the credit of the estate. In

1935, the executors filed a timely return showing an amount due of $80,224.24 and the Collector applied that amount from the suspense account in satisfaction of the estate tax. Less than three years later, in 1938, the executors filed a claim for a refund of the balance, $39,775.76. However, at the same time, the Commissioner completed an audit and determined that the correct amount of estate tax due was $128,759. The Commissioner assessed a deficiency of $48,535, to which the Collector applied the rest of the suspense account. The executors then paid $10,497.34, the remainder of the deficiency plus interest. In 1940, the executors filed another claim for refund, based on additional deductions of $24,717.12. The Commissioner rejected this claim as time-barred, except as to the $10,497.34 paid within the preceding three-year period.

The Court ruled that the Commissioner should have granted the refund. It reasoned that the 1934 remittance was a deposit because the parties treated it as a payment in escrow, in the nature of a cash bond. "There was merely an interim arrangement to cover whatever contingencies the future might define." 323 U.S. at 662, 65 S.Ct. at 538. The Court ruled that the executors "paid" the estate tax in 1938 when the balance of the suspense account was applied in satisfaction of the deficiency. Therefore, the executors were entitled to a refund for the entire amount of the claim.

Stating that it was following *Rosenman,* the Tax Court has concluded that a remittance accompanying a Form 4868 request for extension was a deposit rather than a payment. *See Risman v. Commissioner,* 100 T.C. 191, 1993 WL 72856 (1993). The *Risman* court relied on the individualized facts and circumstances of that case, in which the taxpayers had submitted an arbitrary remittance "in an amount which had no good faith relationship" to their tax liability. *Id.* at 198. Moreover, the IRS had treated the remittance as a deposit by placing it in a suspense account.

No circuit court has followed *Risman.* The circuits in fact have diverged in their interpretation of *Rosenman.* Three lines of authority have emerged. The Fifth and Eighth Circuits read *Rosenman* as holding that a remittance will not be construed as a payment until the Commissioner has made a formal assessment of tax deficiencies. *See United States v. Dubuque Packing Co.,* 233 F.2d 453 (8th Cir.1956); *Thomas v. Mercantile Nat'l Bank,* 204 F.2d 943 (5th Cir.1953). The Eighth Circuit has since retreated from *Dubuque Packing* by holding that a preassessment remittance can constitute a payment if the parties treat it as a tax payment rather than as a cash bond or payment in escrow. *See Essex v. Vinal,* 499 F.2d 226, 229 (8th Cir.1974). Although the Fifth Circuit has criticized the holding in *Mercantile National Bank, see Ford v. United States,* 618 F.2d 357, 360 (5th Cir.1980), that circuit has continued to follow the rule as stare decisis. *See id.* at 361.

The second line of authority post *Rosenman* is a "facts and circumstances" test. *See, e.g., Moran v. United States,* 63 F.3d 663, 667–68 (7th Cir.1995); *Blatt v. United States,* 34 F.3d 252, 255 (4th Cir.1994); *Cohen v. United States,* 995 F.2d 205, 209 (Fed. Cir.1993); *Ewing v. United States,* 914 F.2d 499, 504 (4th Cir.1990); *Fortugno v. C.I.R.,* 353 F.2d 429, 435–36 (3d Cir.1965). In determining whether a remittance is a deposit or a payment, these cases consider a number of factors, including the taxpayer's intent when making the remittance, how the IRS treats the remittance upon receipt and the date of any assessment. *See Moran,* 63 F.3d at 668; *Ewing,* 914 F.2d at 503.

The third line of cases interpreting *Rosenman* holds that a remittance may be determined to be a payment as a matter of statutory interpretation. *See Gabelman v. Commissioner,* 86 F.3d 609 (6th Cir.1996); *Zeier v. United States,* 80 F.3d 1360 (9th Cir.1996); *Weigand v. United States,* 760 F.2d 1072 (10th Cir.1985). These cases look not to the facts and circumstances of the individual case, but rather to the statutory scheme underlying the remittance in question.

Both *Weigand* and *Gabelman* addressed a situation like the one before us. In *Weigand,* the Tenth Circuit held that an estimated tax payment accompanying Form 4868 was necessarily a "payment" rather than a

deposit. That court relied on the language of § 6513(b)(2), which provides:

Any amount paid as estimated income tax for any taxable year shall be deemed to have been paid on the last day prescribed for filing the return under § 6012 for such taxable year.

See 760 F.2d at 1074.

The Sixth Circuit in *Gabelman* agreed that this statute was persuasive. *See* 86 F.3d at 612. The *Gabelman* decision also relied on the general proposition that a taxpayer has an affirmative duty to pay his taxes by the statutory due date. *See id.* at 611 (citing *Manning v. Seeley Tube & Box Co.*, 338 U.S. 561, 70 S.Ct. 386, 94 L.Ed. 346 (1950)). The Tax Code provides:

when a return of tax is required under this title or regulations, the person required to make such return shall, without assessment or notice and demand from the Secretary ... pay such tax at the time and place fixed for filing the return (determined without regard to any extension of time for filing the return).

26 U.S.C. § 6151(a). In addition, *Gabelman* relied on regulations governing an automatic extension under Form 4868 which similarly require prompt payment: "Notwithstanding the application of § 1.6081–1(a), any automatic extension of time granted under paragraph (a) of this section shall not operate to extend the time for payment of any tax due under such a return." 26 C.F.R. § 1.6081–4(b).

Ninth Circuit law is far more consistent with the decisions in *Gabelman* and *Weigand* than with any other line of authority. In an estate tax case, this court flatly rejected the Fifth and Eighth Circuits' holding that there can be no payment before a formal assessment:

We also reject the estate's argument that there can be no payment of tax before the IRS makes a formal assessment of the estate's tax liabilities. An assessment is merely "a bookkeeping procedure that permits the government to bring its administrative apparatus to bear in collecting a tax." Most taxes are collected voluntarily, without an assessment; an assessment serves as the basis on which the IRS takes

action against those who do not voluntarily pay their taxes on time.

*Zeier v. United States*, 80 F.3d at 1364 (citations omitted).

Our opinions in *Zeier* and in *Ehle v. United States*, 720 F.2d 1096 (9th Cir.1983), applied statutory analysis to determine whether remittances constituted deposits or payments. In *Ehle*, we held that withholdings from wages are necessarily payments rather than deposits, even if a taxpayer does not file returns for the years in question. *See id.* at 1097. *Ehle* relied on 26 U.S.C. § 6513(b)(1), which provides that amounts withheld from wages are deemed paid on the April 15th following the close of the tax year. We further noted that an analysis of the facts and circumstances of each case is not necessary when the Tax Code requires a remittance to be considered a payment. *See id.* In *Zeier*, this court held that a remittance of estimated estate taxes constitutes a payment rather than a deposit.

The Code explicitly provides that absent specific designation as a deposit, remittances paid at the time the return was due constitute payments "whether precisely calculated or not." *Blatt v. United States*, 34 F.3d 252, 256 (4th Cir.1994); *see also Ehle*, 720 F.2d 1096; 26 U.S.C. §§ 6401(c), 6151(a).

80 F.3d at 1364.

■ When we look to the statutory scheme here as we did in *Zeier* and *Ehle*, we must conclude that a remittance with a Form 4868 is a payment. An automatic extension does not relieve the taxpayer of his obligation to remit payment for the taxes in question. *See Gabelman*, 86 F.3d at 612; *Zeier*, 80 F.3d at 1364. The governing Treasury regulation clearly required Ott to remit "estimated" payments, 26 C.F.R. § 1.6081–4(a)(4) (1987). The Code further states that estimated payments are deemed paid on the April 15th following the close of the tax year in question. *See* 26 U.S.C. § 6513(b)(2). Moreover, a general provision of the Code states that tax payments are due at the time fixed for filing the return, regardless of any extension of time for filing the return. *See* 26 U.S.C. § 6151(a). Thus, under the general terms of the Code and the specific regula-

tion governing automatic extensions, any amounts remitted with a Form 4868 must be payments in satisfaction of tax obligations. The current versions of Form 4868 and the governing regulations are even more specific. Although it no longer requires a taxpayer to remit estimated tax, the form now clearly provides that any funds remitted with the form will be considered a payment of tax. The governing regulation still states that the extension for filing a return does not constitute an extension for payment of taxes. 26 C.F.R. § 1.6081–4(b).

Ott's 1987 remittance of $25,000 therefore constituted a payment rather than a deposit and the two-year statute of limitations began to run at that time. It had expired by the time Ott claimed a refund in 1993. The district court properly granted the government's motion for summary judgment.

AFFIRMED.