[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

-----------------------------------------
No. 98-8514
-----------------------------------------
D. C. Docket No. 5:96-CV-94-1

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
08/10/99
THOMAS  K. KAHN
CLERK

LAURENCE KEITT DANTZLER,
BROOKS WHITTLE DANTZLER,

                                        Plaintiffs-Appellees,

        versus

UNITED STATES INTERNAL REVENUE SERVICE,

                                        Defendant-Appellant.

----------------------------------------------------------------
Appeal from the United States District Court
for the Middle District of Georgia
----------------------------------------------------------------

(August 10, 1999)

Before EDMONDSON and CARNES, Circuit Judges, and WATSON*, Senior Judge.

_____

*       Honorable James L. Watson, Senior Judge, U. S. Court of International Trade,
sitting by designation.

EDMONDSON, Circuit Judge:

As legal authority, the binding aspect of an earlier case is found in the actual disposition of the case given its particular essential facts. The power of precedent chiefly is to assure that like cases have like results. Cases that are not essentially alike can rightly have different results. These principles come into play as we decide the government's appeal from the district court's judgment awarding Taxpayers refunds of their federal income taxes. Because Taxpayers' claims for refunds were not timely, we reverse.

## Background

Each April of 1986, 1987 and 1988, taxpayers Laurence and Brooks Dantzler, who are husband and wife, submitted to the federal Internal Revenue Service ("IRS") a Form 4868 application for a four-month extension of time for filing their annual federal income tax return. Each year, the Dantzlers enclosed a remittance. These amounts were sent to the IRS: $5,220.00 in 1986; $3,234.64 in 1987; $4,577.89 in 1988. Each time, the IRS granted the Dantzlers' request for a four-month extension.

The Dantzlers did not file the returns within the respective four-month extension periods, nor did they request additional extensions. Instead, the Dantzlers submitted their tax returns for the years 1985, 1986 and 1987 in December 1992. The

returns showed that the Dantzlers' liability was less than the remittances the Dantzlers had made in connection with the corresponding extension requests, and each return accordingly sought a refund. In November 1993, the Dantzlers requested that the IRS return the excess amounts to them. The IRS later notified the Dantzlers that it had disallowed their refund claims because the claims were barred by the statute of limitations.

The Dantzlers brought this action seeking a refund for the years 1985, 1986, and 1987.[1] The government and the Dantzlers filed cross-motions for summary judgment. The district court denied the government's motion and granted the Dantzlers' motion. The government appeals.

## Discussion

This case presents the issue of whether the remittances submitted by the Dantzlers with their 4868 forms, requesting extensions of time for the filing of their 1985, 1986 and 1987 tax returns, constitute payments for purposes of the statute of limitations on a claim for refund. We conclude that the remittances were payments.

---

[1]The Dantzlers also sought a refund for the year 1989. The government conceded to the district court that the Dantzlers' claim for 1989 was timely; so, it is no issue in this appeal.

The Dantzlers' refund claims are therefore time-barred.

The Internal Revenue Code contains two jurisdictional time bars for tax refund claims. Section 6511(a) provides that a refund claim must be filed "within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later, or if no return was filed by the taxpayer, within 2 years from the time the tax was paid." 26 U.S.C. § 6511(a). Even if a claim was filed within the three-year window of section 6511(a), however, section 6511(b)(2)(A) limits the amount of a credit or refund to "the portion of the tax paid within the period immediately preceding the filing of the claim, equal to 3 years plus the period of any extension of time for filing the return." § 6511(b)(2)(A).[2]

So, for the Dantzlers to recover, their claims must have been filed, at the latest, within three years and four months from the time the tax was paid. If the remittances submitted with their Form 4868 applications for extensions were payments, their

---

[2]If a refund claim is not filed within the three-year period of section 6511(a), a taxpayer can obtain a refund only to the extent that the taxes were "paid during the 2 years immediately preceding the filing of the claim." § 6511(b)(2)(B). Whether the Dantzlers were even entitled to the longer three-year-and-four-month look-back provision is questionable, see Miller v. United States, 38 F.3d 473, 475 (9th Cir. 1994) (concluding that an untimely return does not qualify as a valid return under section 6511(a)); but see Mills v. United States, 805 F. Supp. 448, 450 (E.D. Tex. 1992) (concluding that three-year limitations period of section 6511(a), beginning when return is filed, applies to taxpayer filing late return). But, because we conclude that the Dantzlers' claims were not timely even if we give them the maximum possible time under the statues, we need not (and do not) decide this issue today. That is, we assume without deciding that the Dantzlers' returns were valid for purposes of section 6511(a) and, by extension, section 6511(b)(2)(B); and we analyze the case accordingly.

claims are time-barred because the claims at issue in this appeal were made more than three years and four months after each respective remittance was made. But, if the remittances were deposits and if the taxes were not paid until the Dantzlers filed their returns in 1992, the Dantzlers' claims are not barred: the payments would have occurred simultaneously with the refund claims.

The Dantzlers argue that their remittances were no payments. They say that binding precedent of our circuit establishes a per se rule that there can be no payment of a tax until there has been an assessment of a tax. Because an assessment had not been made when the Dantzlers filed their returns in this case[3] (at which time they also filed their claim for a refund), the Dantzlers contend that their claims were timely.

The distinction between deposits and payments was initially recognized in Rosenman v. United States, 323 U.S. 658 (1945). In Rosenman, the Supreme Court concluded that a refund claim for a remittance of anticipated (but disputed) estate taxes was not time-barred by the predecessor to section 6511: the Court concluded that the pertinent remittance was a "deposit" rather than a "payment." Id. at 663. The estate executors in Rosenman had submitted a remittance of an anticipated estate tax, with a letter stating that payment was "made under protest and duress, and solely for the purpose of avoiding penalties and interest[.]" Id. at 660. The IRS had then placed

_____

[3]That the IRS has never made an assessment is undisputed.

the amount in a suspense account[4] to the credit of the estate.  Id.

Based on its evaluation of the specific facts before it -- the timing of the remittances and the disputed IRS assessment, which came years later than the remittance; the taxpayers' intent in making the remittance; and how the IRS treated the remittance upon receipt -- the Court, in Rosenman, ruled that the remittance was a deposit; so the statute of limitations did not apply.  The taxpayers were accordingly entitled to a refund.  Id. at 661-63.

In Thomas v. Mercantile National Bank, 204 F.2d 943 (5th Cir. 1953), the court seemed to interpret Rosenman as establishing, in effect, a per se rule that a remittance will not be construed as a payment until an assessment of the tax owed has been made. Id. at 944.  Thomas involved a remittance for a proposed estate tax deficiency.  The taxpayers responded with a check for the exact amount, but the assessment was not entered until some time after the government received the money.  The facts of the case were such that the refund claim was timely only if the tax was deemed "paid" on the date of the assessment rather than at the time the check was received.  The court concluded that the check was not a payment until the pertinent tax had been assessed; therefore, the refund claim was timely.  Id.

---

[4]A suspense account is a repository for funds received in connection with federal taxes if no assessment for taxes is outstanding when the funds are received.  Rosenman, 323 U.S. at 662.

6

In Ford v. United States, 618 F.2d 357 (5th Cir. 1980), the court applied Thomas in a case where the taxpayers sought a refund of their federal income taxes. The taxpayers in that case remitted funds in response to a statutory notice of deficiency. After an assessment by the IRS, it was determined they had overpaid. But, the taxpayers did not file a refund claim until the limitations period -- if measured from the time when they remitted funds in response to the notice of deficiency -- had expired. The Ford court said the case was controlled by Thomas, id. at 361, and while disagreeing with the result, see id. at 359-61 (criticizing Thomas and inviting en banc consideration "of a rule we believe not justified by Supreme Court precedent, the practice of other courts, or the realities of our tax system"), the Ford court concluded that the tax was not deemed paid until the date of assessment of deficiency, id. at 361.

In the instant case, the district court believed that Thomas and Ford required it to accept the Dantzlers' position that their remittances were deposits. So, the district court determined that the provisions of section 6511 did not preclude Plaintiffs from obtaining their refunds.

The district court was correct, of course, that it must follow the law of our circuit. We must do so too. Each panel of this court is bound by an earlier decision of this court which decided an indistinguishable case, unless and until that decision is overruled by the court en banc or by the Supreme Court. See Bonner v. City of

7

Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).  The law-of-the-circuit rule, however, will not determine the outcome here, because the Thomas and Ford cases are distinguishable, given the facts of the present case.

The district court erred in concluding that it was bound to follow Thomas and Ford in this case.  The courts in Thomas and Ford were not presented with and did not decide the question presented in this case:  whether taxpayers' remittances submitted with a Form 4868 request for an extension of time for the filing of income tax returns constitute payments of tax for purposes of the statute of limitations for refund claims.  We do face that particular question; and we conclude that the remittances in this case were not deposits, but were payments.

An automatic extension pursuant to Form 4868 does not relieve the taxpayer of the obligation to pay the taxes on the statutory due date:  The regulations for Form 4868 extensions provide, "[n]otwithstanding the application of § 1.6081-1(a), any automatic extension of time . . . shall not operate to extend the time for payment of any tax due on such return."  26 C.F.R. § 1.6081-4(b).  Form 4868 itself states, in bold print, "[t]his is not an extension of time for payment of tax."  Most important, section 6513, "Time return deemed filed and tax considered paid," provides that "[a]ny amount paid as estimated income tax for any taxable year shall be deemed to have been paid on the last day prescribed for filing the return . . . for such taxable year

8

(determined without regard to any extension of time for filing such return)." 26 U.S.C. § 6513(b)(2).[5]

Section 6513(b)(2) applies to remittances made in conjunction with a request for extension of time because such remittances are estimates of tax. Form 4868 remittances are the taxpayer's estimate of the tax liability for the preceding year. The IRS regulations, which require remittances to be submitted with Form 4868 applications, see 26 C.F.R. § 1.6081-4(b), state that "[a]n application for extension must show the full amount properly estimated as tax for the taxable year." 26 C.F.R. § 1.6081-4(a)(4) (entitled "Proper estimate of tax"). Therefore, based on the specific statutory and regulatory scheme at issue in this case, the Dantzlers' remittances were payments, rather than deposits. See Ertman v. United States, 165 F.3d 204, 207-08 (2d Cir. 1999) (concluding that section 6513(b)(2) applies to Form 4868 remittances and that such remittances are payments); Ott v. United States, 141 F.3d 1306, 1309 (9th Cir. 1998) (concluding that taxpayer filing Form 4868 application was required to remit estimated taxes, as that term is used in section 6513(b)(2), and that remittance with Form 4868 is payment).

---

[5]A general provision of the Code further states, "when a return of tax is required . . . the person required to make such return shall, without assessment or notice and demand from the Secretary . . . . pay such tax at the time and place fixed for filing the return (determined without regard to any extension of time for filing the return)." 26 U.S.C. § 6151(a). But, in this case, because we have specific statutes and regulations governing automatic extensions, we need not rely solely on section 6151.

9

The existence of this specific statute and the implementing regulations -- which constitute part of the material circumstances of this case and, thus, the circumstances on which our decision is based -- distinguishes Thomas and Ford from the instant case. Neither Thomas nor Ford had occasion to address the collective effect of the provisions which govern the Dantzlers' remittances. Those cases have different facts: they do not involve remittances of estimated income tax and a statute which specifically defines when a remittance of such a tax constitutes a payment. Thomas involved taxpayers who responded to a notice of deficiency in estate tax to forestall the accrual of interest on any potential deficiency, see Thomas, 204 F.2d at 943, and Ford involved taxpayers who responded to a notice of deficiency proposed by the IRS years after the taxpayers had filed their returns, see Ford, 618 F.2d at 358. In this case, the Dantzlers' remittances, submitted in conjunction with a request for an extension of time to file their tax returns, were their own undisputed estimates of their tax liability.

To the extent that the Thomas and Ford opinions purport to hold anything extending beyond the facts with which each of those courts was presented, statements to that effect are unnecessary to the Thomas and Ford decisions, that is, the language is dicta. See United States v. Eggersdorf, 126 F.3d 1318, 1322 n.4 (11th Cir. 1997) ("[L]anguage in . . . [an opinion] not necessary to deciding the case then before us"

10

is dicta); <u>Great Lakes Dredge & Dock Co. v. Tanker Robert Watt Miller</u>, 957 F.2d 1575, 1578 (11th Cir.1992) (explaining that what is said in a prior opinion about a question not presented there is dicta, so a later panel is "free to give that question fresh consideration").  Neither the <u>Ford</u> nor <u>Thomas</u> court could make a judicial decision about an issue which was not squarely presented by the material facts of those cases.

Strictly speaking, judicial opinions do not make binding precedents; judicial decisions do.  As the Supreme Court has recently explained, "[t]here is, of course, an important difference between the holding in a case and the reasoning that supports that holding."  <u>Crawford-El v. Britton</u>, 118 S. Ct. 1584, 1590 (1998).  A judicial opinion is not a statute, and not every sentence in a judicial opinion is law.[6]  And there is a big difference between following a precedent where the prior-precedent rule demands it and extending a precedent.

<u>Thomas</u> and <u>Ford</u> are binding, but only on cases presenting facts materially the same as those presented to the <u>Thomas</u> and <u>Ford</u> courts.  Of course, precedents can have persuasive force that goes beyond their technical powers to bind.  The reasoning contained in the <u>Thomas</u> and <u>Ford</u> opinions may prove persuasive in other cases, <u>see</u>

---

[6]We understand that the precedential sweep of decisions and opinions of the United States Supreme Court may possibly be broader than those of lower courts; our comments today are limited to the decisions of lower courts, such as our own.

McDonald's Corp. v. Robertson, 147 F.3d 1301, 1314-15 (11th Cir. 1998) (Carnes, J., concurring) (recognizing some useful purposes of dicta):  for example, where a specific statute does not otherwise provide for a date on which taxes are deemed paid, where a taxpayer submits a remittance under protest merely to stop penalties from accumulating, rather than a situation, as in this case, where the taxpayer (at the time of the remittance) is not challenging a liability claimed by the IRS.  But, the Thomas and Ford decisions are not binding in this case,[7] and because of the differences noted above, we do not find them persuasive.  We cannot ignore the plain statutory and regulatory language applicable in this case.  We base our decision on that language, and on the precise facts before us.

Although the district court did not rely on it, we also note that our decision is in no way contrary to the Supreme Court's Rosenman decision or opinion.  In Rosenman, the Court did not have before it the question whether there can be payment of a tax without assessment, and it made no ruling in that regard.  "[Rosenman] involved a complicated, individualized set of circumstances . . . [and] was decided

---

[7]But see Harden v. United States, 76 A.F.T.R.2d 95-7980 (5th Cir. 1995) (unpublished) (concluding that Thomas and Ford are controlling of court's decision about whether remittances forwarded to IRS with requests for extension constitute deposits).  Harden is unpersuasive to us. Harden says that "In [Thomas and Ford], we held that as a matter of law a remittance forwarded to the IRS before an assessment of tax is to be considered a deposit rather than a payment."  76 A.F.T.R.2d at 95-7981.  For reasons explained earlier, we think Harden is incorrect:  Thomas and Ford could not have "held" anything beyond the facts and circumstances with which those courts were presented.

12

before the IRS adopted the automatic extension procedure of Form 4868." Ott, 141 F.3d at 1307. Thomas's unnecessarily broad interpretation of Rosenman -- an interpretation by which the decision in Thomas is explained -- is in no way binding on us. Even the Ford court acknowledged that Rosenman did not require the result in Thomas, see Ford, 618 F.2d at 359 ("Rosenman . . . did not necessarily dictate the disposition of [Thomas]."); see also Fortugno v. Commissioner, 353 F.2d 429, 435 (3d Cir. 1965) ("Rosenman does not foreclose treating as a tax payment a remittance made prior to assessment."). In addition, Ford's unnecessarily broad interpretation[8] of Thomas's holding is not binding in this case, and it cannot change the dicta in Thomas to something more. See United States v. Hunter, 172 F.3d 1307, 1310 n.1 (11th Cir. 1999) (Carnes, J., concurring) ("Two layers of dicta cannot do what one does not-- bind a later panel."). We also note that at least six other circuits have rejected the notion that Rosenman establishes a per se test. See Ertman, 165 F.3d at 206-08 (collecting cases and concluding that Form 4868 remittance is payment and not deposit).

So, we conclude that the Dantzlers' remittances in 1986, 1987 and 1988 with their respective 4868 forms constituted payments rather than deposits. The applicable limitations periods began to run when those remittances and forms were filed with the

---

[8]The facts of Thomas and Ford seem materially different from each other.

13

IRS. Because they did not seek refunds until 1992, the Dantzlers' claims are time-barred.

Because the Dantzlers' refund claims were not timely, the government was entitled to summary judgment. We therefore REVERSE the district court's judgment and REMAND for proceedings consistent with this opinion.

REVERSED AND REMANDED.