William K. VanCANAGAN, in his capacity as personal representative of the Estate of Ford Bovey, and Sharon Bovey, Plaintiffs–Appellants,

v.

UNITED STATES, Defendant–Appellee.

No. 99–5040.

United States Court of Appeals, Federal Circuit.

Decided Oct. 17, 2000.

William K. VanCanagan, Datsopoulos, MacDonald & Lind, of Missoula, Montana, for plaintiffs-appellants. Of counsel was Edward A. Murphy.

Annette M. Wietecha, Attorney, Tax Division, Appellate Section, Department of Justice, of Washington, DC, for defendant-appellee. With her on the brief were Loretta C. Argrett, Assistant Attorney General; and Gilbert S. Rothenberg, Attorney.

Before LOURIE, Circuit Judge, FRIEDMAN, Senior Circuit Judge, and DYK, Circuit Judge.

FRIEDMAN, Senior Circuit Judge.

This appeal challenges a decision of the United States Court of Federal Claims that when the appellants filed an application for an automatic extension of time to file their federal income tax return, the money they remitted to the Internal Revenue Service ("IRS") with their application was a "payment" of their expected tax liability and not a "deposit" to cover such liability. The effect of that ruling was to invalidate as untimely their claim that they had overpaid their taxes. The court therefore dismissed their refund suit. We affirm.

I

A. On April 15, 1990, Mr. and Mrs. Bovey filed with the IRS an application for an automatic four-month extension to file their 1989 federal income tax return. The application, filed on IRS Form 4868, showed their "[t]otal tax liability" as $182,586, their 1989 estimated tax payments as $32,586 and the "BALANCE DUE" as $150,000. *Id.* The form stated: "In order to get this extension, you MUST pay in full the balance due with this form." *Id.* The Boveys remitted $150,000 to the IRS with the extension application.

The Boveys filed an application for an additional two-month extension to October 15, 1990, which the IRS granted. The Boveys filed their 1989 return on October 18, 1994, more than four years after the extended due date.

They followed the same practice in filing their returns for 1990, 1991, and 1993: they sought four-month automatic extensions, made a remittance with the application covering the estimated tax, and then obtained a two-month extension. They filed their 1993 return on October 17, 1994, which was the extended date for that return. The next day they filed their 1990 and 1991 returns on October 18, 1994, three and two years, respectively, after the extended due date.

B. In their 1989 return the Boveys reported a tax due of $105,700, a penalty for underpayment of estimated taxes of $3,579, the "[a]mount paid with Form 4868

(extension request)" of $150,000, and the "amount overpaid" as $73,434, which they requested be applied to their 1990 tax.

In their returns for 1990 and 1991, they also reported an overpayment of taxes. The Boveys reported a balance due of $83,213 in their 1993 return and did not file an administrative claim for refund for 1993.

The IRS disallowed the claimed overpayment of $73,434 for 1989 because they had filed their return more than three years after its due date, which made it untimely. The effect of that disallowance, which prevented the application of the claimed 1989 overpayment to the 1990 tax liability, also eliminated the claimed overpayments for that year and for 1991. The Boveys allege that disallowance also caused them to overpay their 1993 tax.

C. The Boveys then filed the present refund suit in the Court of Federal Claims. (During this appeal Mr. Bovey died and his personal representative was substituted as a plaintiff-appellant. For clarity and ease of presentation, we shall refer to the plaintiffs-appellants as "the Boveys"). The complaint explained their delay in filing their returns as follows: "as a result of the inability to locate documentation substantiating the Plaintiffs deductible expenses incurred in connection with several out of state business operations, the tax returns could not be accurately completed and the tax liability could not be ascertained. Accordingly, pending the receipt of critical information, the tax return could neither be prepared nor filed." They contended that the $150,000 remittance in April 1990 was a "deposit" and that "[c]ontrary to Plaintiffs' intention at the time of making the April 15, 1990 deposit of $150,000.00, the IRS has treated Plaintiffs' April 15, 1990 remittance as a payment if [sic] tax, not as a deposit." "As a result, ... the IRS regards a refund of any portion of that remittance as barred by the statute of limitations on refunds under 26 U.S.C. Section 6511."

In response to the government's motion to dismiss for lack of jurisdiction and for failure to state a claim upon which relief could be granted, the court held that the Bovey's remittances to the IRS "were 'payments' as a matter of law," and dismissed the complaint. The court stated:

[C]ases in which a remittance was found to be a "deposit" do not describe the situation here. In this case, plaintiffs submitted funds to IRS for normal yearly income taxes, without protest or contest. The payment was submitted along with their representation to the Government that it was their estimate of taxes due based on the information they had available. A request for extension does not change the amount of a taxpayer's liability or its due date; it merely allows extra time to file a return. Plaintiffs did not submit a letter with their payment reserving rights or asking that the payment be applied against amounts that they might owe. This was not a periodic "dumping" of payments on IRS, hoping to avoid penalties for unknown obligations. The IRS did not put these funds in a special non-interest bearing suspense account. We cannot say that they payments in 1989 were "disorderly or random."

II

A. Under § 6511(a) of the Internal Revenue Code, 26 U.S.C. § 6511(a), a "[c]laim for credit or refund of [a tax] overpayment" must be filed "within 3 years from the time the return was filed." Under Treas. Reg. § 301.6402–3(a), the Bovey's 1989 return, filed in October 1994, was a "claim for credit or refund" under § 6511. Since the return was also the Bovey's administrative claim for refund, the claim was timely because it was filed within three years of (actually, on the same date as) the filing of the return.

■ Section 6511(b)(2) of the Internal Revenue Code, however, imposes a "[l]imit on amount of credit or refund." Even if the claim is filed within the three years prescribed in subsection (a), the amount of the credit or refund cannot "exceed the

portion of the tax paid" during the three years (plus any extensions for filing the return) "immediately preceding the filing of the claim." 26 U.S.C. § 6511(b)(2). Since the Boveys received two extensions, totaling six months, for filing their returns, the amount of credit cannot exceed the amount of the tax they "paid" during the forty-two months before the filing of their 1989 return on October 17, 1994. During that period, they paid no portion of their 1989 tax.

The source of the Bovey's asserted overpayment of 1989 tax for which they seek a credit was the $150,000 they remitted to the IRS on April 15, 1990. Since that remittance, if it was a "payment" of taxes (as the Court of Federal Claims held), was made more than forty-two months before they filed their returns, Internal Revenue Code § 6511(b)(2)(A) bars them from obtaining any credit or refund with respect to the alleged overpayment of 1989 taxes resulting from that remittance. *Cf. Curry v. United States,* 774 F.2d 852, 855 (7th Cir.1985).

 B. The Boveys contend, however, that their 1990 remittance was not a "payment" of estimated taxes but instead was a "deposit" to cover their anticipated tax liability, which they are entitled to recover without regard to the limitations § 6511(b)(2)(A) imposes upon credit or refund of a tax "overpayment."

The Internal Revenue Code does not provide for deposits by taxpayers to meet their anticipated tax liabilities. That is a judicially-created concept that stems from the Supreme Court's decision in *Rosenman v. United States,* 323 U.S. 658, 65 S.Ct. 536, 89 L.Ed. 535 (1945). That was an estate tax case in which the estate delivered to the Collector of Internal Revenue a check " 'for $120,000, as a payment on account of the Federal Estate tax ... This payment is made under protest and duress, and solely for the purpose of avoiding penalties and interest, since it is contended by the executors that not all of this sum is legally or lawfully due.' This amount was placed by the Collector in a

suspense account to the credit of the estate." *Id.* at 660, 65 S.Ct. 536 (alteration in original). The Court held that the $120,000 remittance was not the "payment" of the disputed estate tax. It stated:

> The Government does not consider such advances of estimated taxes as tax payments. They are, as it were, payments in escrow. They are set aside, as we have noted, in special suspense accounts established for depositing money received when no assessment is then outstanding against the taxpayer. The receipt by the Government of moneys under such an arrangement carries no more significance than would the giving of a surety bond. Money in these accounts is held not as taxes duly collected are held but as a deposit made in the nature of a cash bond for the payment of taxes thereafter found to be due.

*Id.* at 662, 65 S.Ct. 536. The Court referred to "the true nature of an arrangement such as this to treat it as an estimated deposit and not as a payment." *Id.* at 663, 65 S.Ct. 536.

In *Baral v. United States,* 528 U.S. 431, ——, 120 S.Ct. 1006, 1009, 145 L.Ed.2d 949 (2000), the Supreme Court held that under section 6513(b)(1) of the Internal Revenue Code, remittances of estimated income tax were "paid" on the due date for the taxpayer's income tax return. The Court made clear in *Baral* that it was not overruling *Rosenman,* and that its decision was based on its interpretation of section 6513, which provides that "[a]ny amount paid as estimated income tax for any taxable year shall be deemed to have been paid on the last day prescribed for filing the return...." 26 U.S.C. § 6513(b)(1); *Baral,* 528 U.S. at ——–——, 120 S.Ct. at 1009–11. We need not determine whether a remittance that accompanies Form 4868 is of an estimated income tax within the meaning of section 6513, since we conclude that even when analyzed under the princi-

ples of *Rosenman*, the remittance here was a payment rather than a deposit.

■ The concept of a deposit of estimated taxes has become a settled part of tax jurisprudence. Indeed, the IRS itself has provided procedures and requirements for taxpayers wishing to make such deposits. The IRS merely requires that the taxpayer designate the remittance "in writing as a deposit in the nature of a cash bond." Rev. Proc. 84–58, 1984–2 C.B. 501. When a taxpayer makes a deposit, the taxpayer can obtain a refund on request and avoids interest and penalties on any tax subsequently assessed. *Id.*

■ In this court, the determination whether "a remittal of money against an assessed or likely tax liability ... constitute[s] ,.. a payment or a deposit of taxes" depends upon the particular "circumstances." *New York Life Ins. Co. v. United States*, 118 F.3d 1553, 1557 (Fed. Cir.1997), *cert. denied*, 523 U.S. 1094, 118 S.Ct. 1559, 140 L.Ed.2d 792 (1998); *see also Cohen v. United States*, 995 F.2d 205, 209 (Fed.Cir.1993). The Court of Federal Claims correctly held that, in the circumstances in this case, the $150,000 the Boveys remitted to the IRS with their April 1990 application for an extension of time for filing was a payment and not a deposit.

There is nothing on the face of the April 1990 extension application that even suggests that the $150,000 the Boveys remitted was anything other than what it purported to be: the payment of their anticipated 1989 tax liability. They did not state that the remittance was a deposit rather than a payment or that they were preserving their right to contest their alleged tax liability. Nor is there any indication that they raised those issues in any documentation accompanying the application. There is no evidence, or even claim by the Boveys, that they had made a notation on the $150,000 check itself to indicate that it was a deposit. The Boveys did not attempt to use the IRS procedure for making a deposit, which merely required the Boveys to designate in writing that the remittance was a deposit in the

nature of a cash bond. Rev. Proc. 84–58, 1984–2 C.B. 501.

There also is no indication that the government viewed the remittance as a deposit and therefore placed it in a separate account (as was done in *Rosenman*). To the contrary, it appears that the IRS treated the $150,000 as part of the general tax revenues it received.

The Boveys' treatment of the $150,000 as a "payment" of anticipated taxes also is consistent with the instructions and requirements of the IRS Form 4868, on which they filed their extension application, and with their 1989 return that they filed in October 1994. In their Form 4868, the Boveys showed a "[t]otal tax liability for 1989" of $182,586, and a "BALANCE DUE" of $150,000, which the form stated "you MUST pay in full" "to get this extension [of time for filing]." The form also instructed the taxpayer where to file the form "and pay any amount(s) you owe". Similarly, the Boveys' 1989 tax return showed the $150,000 as "[a]mount paid with Form 4868 (extension request)." The $150,000 was included in the Boveys' "total payments," and they showed $73,434 as the "amount OVERPAID."

In their response to the government's motion to dismiss in the Court of Federal Claims, the Boveys submitted an affidavit of the accountant who had prepared the 1990 application for an automatic extension of time to file. This affidavit, executed on December 20, 1995, stated that the $150,000 remittance "represented a deposit toward a possible future tax liability which at the time had not been ascertained," and that

> at the time of mailing the $150,000.00 remittance to the Internal Revenue Service, neither I as the certified public accountant charged with preparing the Boveys' tax returns nor Mr. and Mrs. Bovey themselves could accurately determine what the amount of federal income tax liability, if any might be. The amount of the remittance was determined by me arbitrarily so that Mr. and Mrs. Bovey would not have to pay penalties and interest and [sic] when the tax liability for 1989 was later ascertained. That the $150,000.00 remittance submit-

**1354**

ted to the Internal Revenue Service by me on behalf of the Boveys was made arbitrarily, and in an amount which we hoped would exceed their largest possible joint federal income tax liability for 1989. In fact, per my instruction, the Boveys merely deposited $150,000.00 with the Internal Revenue Service until either they or my accounting firm could finally ascertain and determine the extent of their federal income tax liability for 1989, if any.

The affidavit further stated that "the $150,000.00 remittance deposited with the Internal Revenue Service in April of 1990 was never intended by Mr. and Mrs. Bovey nor the undersigned to constitute a payment of an ascertainable tax liability. In fact, neither the undersigned nor Mr. and Mrs. Bovey knew at the time of the making of the remittance when an actual tax liability would ultimately be ascertained, and what the amount of the liability, if any, might be."

The Boveys apparently contend that they thereby "presented evidence which supports their assertion that the remittance was a 'deposit,'" and that such "evidence" precluded the Court of Federal Claims from dismissing their complaint without a trial. We disagree. The accountant's explanation of what he did and his characterization of the $150,000 remittance as a "deposit," made more than 5½ years after the extension application was filed and the remittance made, is insufficient to raise any valid factual issue on whether the $150,000 remittance was a deposit. As we have explained, the undisputed facts and circumstances of this case discussed above leave no doubt that the Court of Federal Claims correctly held that the remittance was a payment of taxes, not a deposit.

Five other circuits have held that remittances accompanying extension requests are payments. *Dantzler v. United States,* 183 F.3d 1247, 1252 (11th Cir.1999); *Ertman v. United States,* 165 F.3d 204, 208 (2d Cir.1999); *Ott v. United States,* 141 F.3d 1306, 1309 (9th Cir.1998); *Gabelman v. Commissioner of Internal Revenue,* 86 F.3d 609, 611–13 (6th Cir.1996); *Weigand v. United States,* 760 F.2d 1072, 1074 (10th Cir.1985). The critical facts on this issue in each of those cases are virtually identical to those in the present case.

In each of those cases, the taxpayer filed an application for an automatic extension of time on IRS Form 4868, and submitted a remittance; in each of them the court held that the remittance was a payment of the estimated tax shown, not a deposit, so that the taxpayer's claim for a refund was untimely filed. Although in those five cases the courts of appeals held that the remittance was per se a payment as a matter of law, we do not go that far in our decision which, as indicated, turns on the facts and circumstances here. In light of those cases' holdings, however, a fortiori they are persuasive authority that under the facts and circumstances test that we apply, the Boveys' remittance was a payment, not a deposit.

## CONCLUSION

The judgment of the Court of Federal Claims dismissing the complaint is

*AFFIRMED.*