Donald W. **BOENSEL**, as executor of the estate of John L. **Boensel**, Plaintiff,

v.

The **UNITED STATES**, Defendant.

No. 09–627T.

United States Court of Federal Claims.

Aug. 5, 2011.

**608**

William A. Neilson, New Orleans, LA, for plaintiff, with whom was James R. Washington, III.

S. Starling Marshall, United States Department of Justice, Washington, DC, with whom was John A. Dicicco, Principle Deputy Assistant Attorney General, for defendant. Steven I. Frahm and Mary M. Abate, United States Department of Justice, of counsel.

### OPINION

FIRESTONE, Judge.

Pending before the court are the parties' cross-motions for summary judgment. In this action, the plaintiff, Donald Boensel, seeks the recovery of $111,860 in federal estate tax, which the plaintiff remitted to the Internal Revenue Service ("IRS") following the death of his father, John Boensel, in 1999. The core question in these motions for summary judgment is whether the remittance made by the plaintiff to the IRS following the death of his father in 1999 is more properly characterized as a tax deposit or as a tax payment. If the 1999 remittance is a tax deposit, then the plaintiff may be entitled to recover the amount claimed. However, if it is a tax payment, then the plaintiff's claim falls outside the three-year tax refund recovery period. For the reasons set forth below, the court finds that the 1999 remittance was

a tax payment. As such, the plaintiff's claim to recover the alleged overpayment of estate tax is outside the recovery period. The plaintiff's motion for summary judgment is therefore **DENIED**; the government's motion for summary judgment is **GRANTED**.

### I. UNDISPUTED FACTS

Donald W. Boensel ("plaintiff") was appointed executor of the estate of his father, John L. Boensel ("Mr. Boensel"). Defendant's Proposed Finding of Uncontroverted Fact ("DPF") 3. Mr. Boensel died on August 30, 1999 in Louisiana, about one year after the death of his wife, Thelma Boensel ("Mrs. Boensel"). DPF 1, 4. At the time of his father's death, the plaintiff lived in California and was dealing with personal issues and the failure of his business. DPF 7. To handle the estate, the plaintiff retained the accountants (the firm of LaPorte, Sehrt, Romig & Hand) and lawyers (the firm of Liskow & Lewis) with whom his father had done business for years, and who had handled Mrs. Boensel's estate only a year before. DPF 8–10. Because the value of Mr. Boensel's assets remained virtually unchanged from the time of Mrs. Boensel's death, the plaintiff did not believe that much additional work needed to be done to prepare his father's estate tax returns. DPF 13. Although a federal estate tax return had been filed for Mrs. Boensel's estate, Mr. and Mrs. Boensel had their attorneys arrange their financial affairs such that Mrs. Boensel would not incur any federal estate tax. Rather, through Mr. and Mrs. Boensel's estate planning, the tax burden shifted to Mr. Boensel upon his death. DPF 84.

Using the information they had gathered for Mrs. Boensel's estate and the information the plaintiff provided to them, the plaintiff's lawyers prepared a descriptive list of the assets they believed Mr. Boensel owned at the time of his death. DPF 16. The lawyers grouped Mr. Boensel's property into three categories: a 1/2 interest in community property that Mr. Boensel held with Mrs. Boensel in which Mr. Boensel had disclaimed Mrs. Boensel's interest after her death;[1] a 7/8

---

1. This community property included a home on Lark Street, certain securities, certain furniture, and jewelry.

interest in community property that the Boensels had owned together in which Mr. Boensel had not disclaimed his interest;[2] and a 3/4 interest in real estate in Alton, Louisiana that had belonged to Mrs. Boensel separately before her death. DPF 17–21. On March 15, 1999, the plaintiff's lawyers sent this list to the plaintiff's accountants with a letter describing these interests. DPF 16. The lawyers also wrote to the plaintiff, enclosing copies of their letter to the accountants and the descriptive list, and asked that he provide any additional information. DPF 23.

As the due dates for the state and federal estate tax returns grew closer, the plaintiff's lawyers became concerned that the returns would not be filed on time. DPF 27. In a letter dated April 30, 1999, they informed the plaintiff that, while the time for filing the estate tax return could be extended by six months, "Interest, and possibly penalties, will accrue on any amount determined to be due that is not paid with the request for extension." DPF 28; Def.'s Ex. 9. The plaintiff's accountants provided him with an estimate of the estate's federal tax liabilities and advised him to remit $435,000 to the IRS by the original due date of the return, May 30, 1999. Plaintiff's Proposed Findings of Uncontroverted Fact ("PPF") 1; DPF 32. The accountants suggested that the plaintiff include an additional amount of ten percent over the amount they estimated was owed as a "cushion." Def.'s Exs. 1, Boensel Dep. 45:12–21, 4. After the accountants provided him with the estimated federal estate tax liability, the plaintiff began gathering funds to "pay [ ] federal estate taxes." DPF 36–38.[3] The plaintiff wrote to banks at which his father had accounts, asking that they assemble the funds he needed to send to the IRS. *Id.* The plaintiff explained the urgency of his request to one bank by stating, "The payment is due to the U.S. Department of Treasury by May 30, 1999, but actually June 1, 1999 because of

the weekend and the Memorial Day holiday." DPF 40. On May 31, 1999, the plaintiff instructed Hibernia Bank to issue a check from his father's account to "Department of Treasury" for $435,000 and to "memo-mark" the check, "Payment of Estimated Estate Taxes." DPF 41. He explained that an employee of his accountants' firm would come to the bank the next day to pick up the check and deliver it and "the necessary accompanying documents" to the local IRS office. DPF 42. The IRS received the check on June 1, 1999. PPF 2; DPF 43–44. The IRS credited the remittance to the plaintiff's account using a Payment Posting Voucher, Form 3244, which identified the $435,000 as a "subsequent payment" and listed in the "remarks" box "4768." DPF 43–44. Form 4768 is the form used to request an extension to file a federal estate tax return. The IRS granted the estate a six-month extension of time to file its return, from May 30, 1999, to November 30, 1999.[4] PPF 3; DPF 45.

After making the $435,000 remittance, the plaintiff believed that he had no further obligations regarding his father's federal estate taxes. DPF 57. However, in February 2005, the IRS sent the plaintiff a notice acknowledging that the estate had made a $435,000 payment on June 1, 1999, but stating that the plaintiff was still required to file an estate tax return. Def.'s Ex. 23. The plaintiff responded on March 1, 2005 by letter and promised to undertake the work necessary to complete the return, stating, "As you pointed out in your correspondence, $435,000 has been paid as estate tax in this matter, which I believe was about 10% more than the accounting estimate." Def.'s Ex. 24. The plaintiff stated, "My recollection is that this was based on a recommendation by the accounting firm, LaPorte, Seht, Robig, et al, which was handling the estate and had created a tax return which may have been pro forma at that time." *Id.* The IRS sent the

---

**2.** This community property included certain securities, real property in Iberville, Louisiana, and certain furniture.

**3.** The plaintiff claims that what the accountants provided him with was a "guesstimate" of the estate tax liability. Pl.'s Mot. Summ. J. 6, ECF No. 23.

**4.** The IRS has not been able to provide a copy of any Form 4768 request for extension submitted for Mr. Boensel's estate and the plaintiff contests whether the plaintiff actually submitted such a form. The plaintiff does not, however, dispute that an extension was granted by the IRS.

plaintiff a second notice of overdue estate tax return on July 11, 2006, Def.'s Ex. 25, and the plaintiff responded by letter of August 10, 2006, stating that he was nearly finished with the estate tax return, Def.'s Ex. 26.

In completing the federal estate tax return for Mr. Boensel's estate, the plaintiff used his accountants' and attorneys' work product from Mrs. Boensel's estate, because not much had changed between her death and Mr. Boensel's death. Def.'s Ex. 1, Boensel Dep. 31:10–32:19. Although the plaintiff reached out to his former accountants regarding the treatment of certain items on the return, he was unable to obtain any professional help and completed the return on his own. DPF 75. The IRS received the estate's Form 706 tax return on September 6, 2006. DPF 76. After completing the Form 706, the plaintiff had some questions regarding the treatment of certain items on the return—particularly the deductibility of certain expenses from the estate—and listed particular items of concern in the cover letter he sent to the IRS with the return. DPF 80.

In total, the plaintiff reported an estate tax liability of $323,140 on the Form 706 return and reported a "prior payment" of $435,000. DPF 78. On the "balance due" line of the Form 706, the plaintiff hand wrote, "REFUND DUE <111,860>." *Id.* The IRS assessed the amount of estate tax liability that was self-reported on the return, $323,140, and sent the plaintiff an estate closing document. DPF 101–102. The plaintiff responded by letter of September 28, 2007, pointing out that IRS records showed he had "made a payment of $435,000" in June of 1999 and that the Form 706 he filed in 2006 had claimed a refund of $111,860, and claiming that his refund was due plus interest from the date of the June 1, 1999 payment. DPF 103–04.

The IRS disallowed the plaintiff's claim for refund on December 17, 2007, on the grounds that it was untimely under 26 U.S.C. § 6511(b)(2).[5] The IRS explained that the plaintiff was not entitled to a tax refund because the plaintiff had made the payment to the IRS more than three years before the claim was filed. Pl.'s Ex. 5. Under the relevant statute, a refund claim must be filed within three years of payment. *See* 26 U.S.C. § 6511(b)(2). The IRS notified the plaintiff of the disallowance on December 17, 2007. DPF 106. In accordance with IRS appeal procedures, the plaintiff submitted a formal protest to the IRS on December 25, 2007, appealing the disallowance and emphasizing that he had made a "timely estimated payment of $435,000" that "amounts to a payment of almost *35%* that is being denied as if never paid." DPF 107–08 (emphasis in original). The plaintiff stated, "Effectively, the denial of this refund is a 35% penalty on taxes that were, in fact, paid on time." Pl.'s Ex. 6. He explained that he would never have "approved the payment" his accountants advised him to make if he had been aware that their estimate excluded "legitimate expenses and deductions" and resulted in the "overpayment." DPF 112–113. The plaintiff then hired a new lawyer, William Jefferson Davis, to handle his appeal, which the IRS Appeals Office eventually disallowed. DPF 116–117. Subsequently, through his current counsel, the plaintiff timely filed the complaint in this action on September 24, 2009, contending for the first time that the usual three-year lookback period for refund claims under 26 U.S.C. § 6511(b)(2) should not apply because the $435,000 remittance was actually a deposit and not an estimated tax payment.

## II. DISCUSSION

### A. Standard of Review

Pursuant to Rule 56 of the Rules of the Court of Federal Claims ("RCFC"), summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." RCFC 56(c)(1); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Casitas Mun. Water Dist. v. United States,* 543 F.3d 1276, 1283 (Fed.Cir.

---

5. 26 U.S.C. § 6511(b)(2) provides, "[T]he amount of the credit or refund shall not exceed the portion of the tax paid within the period, immediately preceding the filing of the claim, equal to 3 years plus the period of any extension of time for filing the return."

2008); *Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1323 (Fed.Cir.2001) (citation omitted). In considering a motion for summary judgment, the court's role is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 249, 106 S.Ct. 2505. "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255, 106 S.Ct. 2505; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Casitas Mun. Water Dist.*, 543 F.3d at 1283; *Lathan Co., Inc. v. United States*, 20 Cl.Ct. 122, 125 (1990).

### B. The Undisputed Facts Establish That the Plaintiff's Remittance Was a Payment of Tax and Not a Deposit.

At the time the plaintiff submitted his remittance to the IRS, the Internal Revenue Code did not by its terms authorize taxpayers to make "deposits" with the IRS to meet potential tax liabilities.[6] The concept of a "deposit" as opposed to a tax "payment" was first discussed by the Supreme Court in *Rosenman v. United States*, 323 U.S. 658, 65 S.Ct. 536, 89 L.Ed. 535 (1945). In *Rosenman*, the executors of an estate remitted a check to the IRS in 1934, one day before the payment of the estate's tax was due and fourteen months before the estate's tax return was due. With the check the executors included a letter stating that the check was remitted under "protest and duress, and solely for the purpose of avoiding penalties and interest, since it is contended by the executors that not all of this sum is legally or lawfully due." *Rosenman*, 323 U.S. at 660, 65 S.Ct. 536. The IRS placed the funds in a suspense account. The estate filed the return two months later; the IRS applied a portion of the funds from the suspense account to satisfy the reported liability. More

than three years later, in 1940, the estate filed a claim for refund of the remaining funds. The IRS denied the claim because—other than some additional money submitted in 1938—the funds at issue had been submitted to the IRS over three years prior to the filing of the refund claims under 26 U.S.C. § 6511(b)(2)(A). The lower court ruled in favor of the IRS. The Supreme Court reversed the lower court holding that the three-year refund rule did not apply because the 1934 remittance was a "deposit," rather than a tax "payment," and so did not trigger the three-year statute of limitation on amounts to be refunded. The Supreme Court ruled that where there was no outstanding assessment against the estate and the money was set aside by the IRS in a special suspense account, the remittance was not a "payment" but "a deposit made in the nature of a cash bond." *Id.* at 662–63, 65 S.Ct. 536. The Court thus found that, as a deposit, rather than a payment, the taxpayer's ability to recover was not affected by the three-year limitation period for recovery of overpayment of tax.

The law on deposits versus payments has evolved since the Supreme Court's decision in *Rosenman*. The Federal Circuit, in applying *Rosenman*, has held that determining whether a remittance is a payment or a deposit involves consideration of the facts and circumstances of the case, with no one factor being conclusive. *See VanCanagan v. United States*, 231 F.3d 1349, 1353 (Fed.Cir. 2000); *New York Life Ins. Co. v. United States*, 118 F.3d 1553, 1557 (Fed.Cir.1997); *Cohen v. United States*, 995 F.2d 205, 208–09 (Fed.Cir.1993) (citing *Charles Leich & Co. v. United States*, 329 F.2d 649 (Ct.Cl. 1964)). Decisions of this Circuit have held that relevant factors include: (1) whether the tax has been assessed by the IRS prior to the remittance; (2) whether the remittance is "disorderly," i.e. made without careful consideration of the potential tax liability, *see Northern Natural Gas Co. v. United*

---

6. Now Internal Revenue Code § 6603, enacted in 2004, provides the statutory mechanism for making a deposit of tax:

> A taxpayer may make a cash deposit with the Secretary which may be used by the Secretary to pay any tax imposed under subtitle A or B

or chapter 41, 42, 43, or 44 which has not been assessed at the time of the deposit. Such a deposit shall be made in such manner as the Secretary shall prescribe.

I.R.C. § 6603(a).

*States,* 354 F.2d 310, 315 (Ct.Cl.1965); (3) whether the taxpayer contests liability, *see id.*; (4) whether the taxpayer indicates to the IRS that the remittance is a deposit, *see VanCanagan,* 231 F.3d at 1353; (5) whether the IRS viewed the remittance as a deposit, *see id.*; and (6) whether the remittance was made when payment was due and submitted with a request for an extension of time within which to file a return, *see id.*

 Based on a consideration of each of these factors, the court finds that the balance tips in favor of the government in this case and thus the government is entitled to summary judgment on its contention that the plaintiff's remittance to the IRS in 1999 was a tax payment and not a tax deposit.

### 1. The fact that the estate tax had not been assessed at the time of the remittance is not determinative.

The plaintiff argues that the court should weigh the fact that the estate's tax liability had not been assessed at the time of the plaintiff's remittance most heavily in favor of characterizing the remittance as a tax deposit. The defendant does not dispute that the estate tax liability had not been assessed at the time of the remittance, but argues that this factor alone is not controlling on the question of whether the remittance was a deposit or a payment. Def.'s Br. 39–40.

The court agrees with the government that the existence of an assessment does not control the outcome in this case. Nonetheless, it is clear that the absence of an assessment in this case is a factor that weighs in favor of the plaintiff's claim that the 1999 remittance was a deposit. For example, in *Charles Leich,* the Court of Claims held that where the government had made no assessment and the taxpayer continuously contested proposed liability, a remittance was a deposit and not a payment of tax. *Charles Leich,* 329 F.2d at 653. Similarly, in *Huskins v. United States,* 75 Fed.Cl. 659 (2007), this court found that "the absence of 'an obligation imposed by law to pay any tax' weighs in favor of characterizing the remittance as a deposit, instead of a payment." *Huskins,* 75 Fed.Cl. at 671 (quoting *Charles Leich,* 329 F.2d at 653). However, while the absence of

an assessment at the time of the plaintiff's remittance weighs in plaintiff's favor, this factor alone does not resolve this matter, and must be considered in the context of all the facts and circumstances to be weighed in this case.

### 2. The remittance was not disorderly.

The plaintiff argues that the remittance should be deemed a deposit because it was disorderly and therefore could not be a "payment." According to the plaintiff, the estate essentially "dump[ed] funds on the government in amounts which have no conceivable relationship to the temporarily undetermined liability." Pl.'s Mot. Summ. J. 6, ECF No. 23. The government argues that the plaintiff's remittance was not disorderly because the remittance was made pursuant the recommendation of his accountants, who had the information needed to estimate the estate's tax liability from both Mr. Boensel's attorneys and the plaintiff. The government argues that the undisputed facts demonstrate that the remittance was based on a property list prepared by the lawyers and reviewed in detail by the estate's accountants. The court agrees with the government.

In *Northern Natural Gas,* the Court of Claims explained that cases interpreting *Rosenman* have "held that there is payment where a taxpayer makes a voluntary remittance based upon a bona fide estimate of an uncontested tax liability." *N. Natural Gas,* 354 F.2d at 315. The Court of Claims explained:

> Where a taxpayer admits that it has some liability, but simply dumps funds on the government in amounts which have no conceivable relationship to the temporarily undetermined liability, we have no trouble holding that the remittance is not a bona fide payment.... [In other cases] we held that amounts remitted as estimates of admitted tax liabilities were "overpayments," because they were "made incident to a bona fide and orderly discharge of the taxpayers' actual or reasonably apparent duties."

*Id.* (quoting *Reading Co. v. United States,* 98 F.Supp. 598, 600 (Ct.Cl.1951)).

While the plaintiff characterizes the accountants' recommendation as a "guesstimate" and contends that he arbitrarily included amounts of $60,000 to $95,000 above this "guesstimate," the plaintiff does not dispute that he thought the accountants had most of the information they would need to determine tax liability because only a year or so had passed since the accountants had handled his mother's estate and that "nothing had really changed." Boensel Dep. 22:25–23:7; 32:7–19. He also does not dispute that he provided to the accounting firm "[p]retty much the same [information] they had from [his] mother's estate." Boensel Dep. 22:17–24. He agreed that appraisals had already been conducted a year before for his mother's estate and that he terminated his relationship with the law firm Liskow & Lewis, which had previously handled his mother's estate, because he thought that they "were trying to redo ... the whole thing over again." Boensel Dep. 19:10–19. Finally, the plaintiff does not dispute that he had no reason to question the firm's advice regarding the amount to remit to the IRS. *Id.* 28:17–21.

■ The court finds that in the circumstances described above, the plaintiff's remittance was not a disorderly "dump[ing] of funds" with the IRS, but was based on a consideration of the known facts and a good faith estimate of the estate tax liability. Courts have held that lack of precision in the calculation of estimated taxes does not indicate that a remittance is not a payment of tax. *See Blatt v. United States,* 34 F.3d 252, 256 (4th Cir.1994). Even if the amount remitted was not absolutely correct, it is clear that the amount remitted by plaintiff to the IRS was not a "guesstimate" as the plaintiff alleges. The undisputed evidence establishes that the remittance was based on an actual estimate of the estate's tax liability, taking into account actual valuation information the attorneys and accountants had from the plaintiff's mother's estate together with a small cushion. Thus, the undisputed facts establish that the remittance was not disorderly.

### 3. The taxpayer did not contest liability when he submitted the remittance nor in subsequent communications with the IRS.

There is no dispute here that the plaintiff did not contest the estate's liability for the taxes when he submitted the remittance to the IRS. The plaintiff argues that the lack of protest is not determinative of the remittance's classification. The plaintiff suggests that the plaintiff could not have protested any tax liability because a tax had not yet been assessed. The government argues that a taxpayer can contest liability without an assessment and that the plaintiff in this case gave no indication when the estate submitted the remittance to the IRS that it was contesting any tax liability. The government argues that this case is wholly distinguishable from that in *Rosenman,* wherein the plaintiff submitted the remittance with a letter stating that the funds were submitted "under protest and duress." *Rosenman,* 323 U.S. at 660, 65 S.Ct. 536; *see also Charles Leich,* 329 F.2d at 653 (holding that remittance was a deposit where it was "clear that throughout the entire period taxpayer was contesting the proposed liability"; distinguishing cases where "taxpayers did not negate 'payment' by simultaneous contest").

The court agrees with the government that the absence of any objection to the estate's tax liability weighs in favor of the government's contention that the remittance was a payment. Although no tax had been assessed at the time of the remittance, the plaintiff here had the opportunity to put the IRS on notice that he contested potential tax liability for his father's estate when he submitted the remittance, but, in contrast to the plaintiffs in *Rosenman,* he did not. Indeed, in this case, the plaintiff apparently had no plans to contest liability until the IRS contacted the plaintiff regarding the estate's overdue tax return several years after the plaintiff remitted funds to the IRS. The plaintiff's failure to state any objection to liability when he sent the remittance or to even contact the IRS after remitting the funds weighs heavily in favor of characterizing the remittance as a payment of tax in this case.

### 4. The taxpayer did not indicate that the remittance was a deposit.

It is also not disputed in this case that the plaintiff did not indicate at the time the estate made the remittance that it was making a "deposit." To the contrary, the evidence establishes that the plaintiff (1) referred to the remittance as a "payment" or as funds needed to "pay" or "satisfy" an "estate tax obligation"; (2) requested Hibernia Bank issue a check for $435,000 with a "memo-mark" of "Payment of Estimated Estate Taxes"; and (3) characterized the remittance to the IRS as a "payment" in all of his subsequent correspondence with the IRS. The plaintiff argues that the plaintiff's labeling of the remittance as a "payment" is not determinative of the remittance's status and that the plaintiff's repeated references to "payment" should be taken as synonymous to "remittance," rather than distinguishing the remittance from a "deposit."

■ While the plaintiff is correct that a taxpayer's act of labeling a remittance does not control the remittance's classification, *see New York Life*, 118 F.3d at 1560 (finding remittance was a deposit despite taxpayer describing it as a "payment" of taxes), it remains a factor to be considered. For instance, in *Blatt*, the Fourth Circuit held that a "factor that may be considered in determining the intent of the taxpayer is the way that he phrases his request for a return of part of the remittance." *Blatt*, 34 F.3d at

255 ("If the taxpayer treats a remittance to the IRS as an 'overpayment' for which he seeks a refund, he himself characterizes the remittance as a payment of taxes."). The estate here makes the same argument regarding the limited import of the taxpayer's intent as did the plaintiff in *Huskins*. There, the estate's tax counsel had called the remittance a "payment" in the accompanying cover letter, listed "prior payments" and "overpayments" on the estate tax return, and later asked the IRS about the "status of the refund of the overpayments shown on the return." *Huskins*, 75 Fed.Cl. at 674. However, the court found significant the fact that, four days after the remittance, the estate's tax counsel sent a letter to the estate's personal representative referring to the remittance as "a deposit against the federal estate tax."[7] *Id.* at 676. The court finds that *Huskins* is distinguishable on this ground. Unlike *Huskins*, the plaintiff in this case has not produced any contemporaneous evidence that he regarded the remittance as anything other than a payment. In such circumstances, there is no material fact in dispute regarding the plaintiff's intent to make a payment.[8]

The court also finds that the fact that tax had not been assessed at the time of the remittance does not alter this conclusion. The Federal Circuit has recognized that even where a remittance is made prior to an assessment, the remittance may be considered

---

7. The court in *Huskins* acknowledged that the Supreme Court has rejected the notion that all remittances made prior to the actual assessment of a tax liability are deposits, *see Huskins*, 75 Fed.Cl. at 671 n. 14, but treated this factor as the most important, analyzing other factors, including the plaintiff's labeling of the remittance as a "payment," in the context of the court's finding that the remittance was "an 'interim arrangement to cover whatever contingencies the future might define.'" *Id.* at 676 (quoting *Rosenman*, 323 U.S. at 662, 65 S.Ct. 536).

8. The Federal Circuit held in *VanCanagan* that an accountant's "characterization of the ... remittance as a 'deposit,' made more than 5 1/2 years after the extension application was filed and the remittance made, is insufficient to raise any valid factual issue on whether the ... remittance was a deposit" where the plaintiffs had otherwise at no prior time characterized the remittance at a deposit. *VanCanagan*, 231 F.3d at 1353. Here, it also appears that the first effort to

characterize the remittance as a deposit came in the context of this litigation, ten years after the plaintiff made his remittance to the IRS and three years after the plaintiff communicated with the IRS regarding the estate's tax return. The plaintiff argues that this case is distinguishable from *VanCanagan* because the IRS record in that case was more complete than the record in this case. While it does appear, as the government concedes, that the IRS record is not as complete as it was in *VanCanagan*, this fact does not render this case distinguishable from *VanCanagan*. Here, as in *VanCanagan*, in every contemporaneous communication with the IRS, the plaintiff referred to the remittance as a "payment" and never asked the IRS to treat the remittance as a deposit. Consequently, in accordance with the Circuit's ruling in *VanCanagan*, the plaintiff's current characterization of the remittance as a deposit does not give rise to a triable factual issue.

a payment. *See VanCanagan,* 231 F.3d at 1353–54 (finding a pre-assessment remittance was not a deposit where taxpayers "did not state that the remittance was a deposit rather than a payment or that they were preserving their right to contest their alleged tax liability"). Therefore, in this case, the plaintiff's continual treatment of the remittance as a payment—both at the time of the initial remittance and in his later communications with the IRS regarding the tax return—weighs in favor of a finding that the remittance was indeed a payment and not a deposit.

### 5. The IRS did not view the remittance as a deposit.

The parties are in agreement that the IRS at all times treated the plaintiff's remittance as a payment of tax, rather than a deposit. The government argues that more weight should be afforded to this fact than does the plaintiff. Indeed, the Federal Circuit has held that, like the other factors to be considered, the IRS's treatment of a remittance has import to the court's analysis, but is not determinative. *See VanCanagan,* 231 F.3d at 1353. Thus, this factor weighs in favor of the government's contention that the remittance was a payment.

### 6. The remittance was made at the time payment was due and was apparently accompanied by a request for an extension of time for filing the tax return.

The government contends that the fact that the plaintiff submitted the remittance on the day that the estate tax was due and in conjunction with a request—informal or otherwise—for an extension of time for filing the estate's tax return lends support for a finding that the remittance was a payment of tax. Although there is no dispute that an extension was granted, the plaintiff argues that there is "no proof of a filed Form 4768" request for extension and that the court may thus not give any weight to the plaintiff's remittance on the date the estate tax as due.

The court agrees with the government that this factor, as most of the others considered, supports a finding that the plaintiff made a payment of tax rather than a deposit. The Federal Circuit held in *VanCanagan* that the

fact that a remittance was accompanied by a Form 4868 request for an extension for filing an individual income tax return was evidence that the remittance was a tax "payment." *VanCanagan,* 231 F.3d at 1354. While the Federal Circuit declined to adopt a per se rule that all remittances accompanying such requests for extensions are "payments" as have five other circuits cited in that opinion, *see id.* (citing *Dantzler v. United States,* 183 F.3d 1247, 1252 (11th Cir.1999); *Ertman v. United States,* 165 F.3d 204, 208 (2d Cir. 1999); *Ott v. United States,* 141 F.3d 1306, 1309 (9th Cir.1998); *Gabelman v. Commissioner of Internal Revenue,* 86 F.3d 609, 611–13 (6th Cir.1996); *Weigand v. United States,* 760 F.2d 1072, 1074 (10th Cir.1985)), the Federal Circuit found these decisions to be persuasive authority in support of giving great weight in a facts and circumstances analysis to the submission of a request for extension along with a remittance. *Id.; see also Essex v. Vinal,* 499 F.2d 226, 229 (8th Cir.1974) (finding remittance was a payment where submitted on due date for filing estate tax and in conjunction with request for extension); *Ott v. United States,* 141 F.3d 1306, 1309–10 (9th Cir.1998) (finding that because request for extension requires payment of tax on date due, remittance submitted with such a request is a payment of tax). *Cf. Blatt,* 34 F.3d at 257 (finding remittance was a payment where taxpayer did not properly request an extension but IRS treated the payment as one made with a request for extension).

The court finds that although *VanCanagan* involved the payment of income tax, the Federal Circuit's reasoning in that case is not distinguishable from this case simply because this case involves estate tax. Nor is the Federal Circuit's reasoning distinguishable simply because the government has not been able to locate the plaintiff's formal request for an extension of time via Form 4768. Here, it is not disputed that the evidence indicates that the plaintiff's accounting firm was going to request, and the IRS indisputably granted, an extension of time. *See* PPF 3; DPF 44. The plaintiff has not in fact alleged that he did not submit a Form 4768 request, and, although that precise form has

not been produced through discovery, the IRS processed the plaintiff's remittance using a Form 3244 Payment Posting Voucher, which listed "4768" in the "remarks" box. DPF 44. Even if the plaintiff did not submit a formal Form 4768, but merely requested an extension informally, the plaintiff's duty to pay the estate tax on the original date due was not altered by the informality of his request. *See* Treas. Reg. § 20.6081–1(e) ("An extension of time for filing a return does not operate to extend the time for payment of the tax."). As such, the court finds based on *VanCanagan* that the plaintiff's remittance on the date the estate tax was due and in conjunction with the granting of an extension of time for filing the return by the IRS weighs heavily in favor of the court's finding that the remittance was a payment of the estate tax.

**7. Analysis of the facts and circumstances of the plaintiff's remittance leads the court to conclude that the remittance was a payment of estate tax.**

The court finds based on all of the facts and circumstances of this case discussed above, that the plaintiff's June 1, 1999 remittance to the IRS was a payment of the tax for his father's estate.

**C. Revenue Procedure 84–58 Does Not Alter the Facts and Circumstances Test.**

The plaintiff argues that the facts and circumstances test has been altered by Revenue Procedure 84–58 § 4.02 which provides, "A remittance made before the mailing of a notice of deficiency that is designated by the taxpayer in writing as a deposit in the nature of a cash bond will be treated as such by the Service." Rev. Proc. 84–58 § 4.02(1). A later section provides, "Any undesignated remittance not described in section 4.03 made before the liability is proposed to the taxpayer in writing (e.g., before the issuance of a revenue agent's or examiner's report), will be treated by the Service as a deposit in the nature of a cash bond." *Id.* § 4.04(1). The plaintiff contends, relying on the analysis in *Huskins,* that the effect of these regulations is that a remittance may either be "designat-

ed" as a deposit under § 4.02 or "not specifically designated" under § 4.04, but may not be designated as a payment, and, if "not specifically designated," must be treated as a deposit. The defendant argues in response that the plaintiff's interpretation of these IRS procedures is inconsistent with the Federal Circuit's ruling in *VanCanagan.* It also notes that the plaintiff's characterization of the remittance is an appropriate fact and circumstance to consider and suggests that Revenue Procedure § 4.04 applies only when there has been an IRS audit, which is not at issue here.

The court finds that the cited Revenue Procedures do not alter the facts and circumstances test and do not prevent a court from considering the plaintiff's characterization of a remittance when considering whether a remittance was a payment or deposit. In *Huskins,* the court conducted a lengthy analysis of the effect of Revenue Procedure 84–58 in the context of a remittance submitted with a cover letter that referred to the remittance as a "payment." *See Huskins,* 75 Fed. Cl. at 666–69. There, the court agreed with that plaintiff's argument that under Revenue Procedure 84–58, a remittance may be one of two things: designated as a deposit or undesignated—even if the taxpayer refers to the check remitted as a "payment" in an accompanying cover letter. *Id.* at 668 ("Therefore, under Rev. Proc. 84–58, it would be impossible for the Estate to 'designate' the remittance as a payment."). Thus, the court found that the remittance was "undesignated" and, having been made "before the liability is proposed to the taxpayer in writing (e.g., before the issuance of a revenue agent's or examiner's report)," it must be "treated by the Service as a deposit in the nature of a cash bond." *Id.* at 669 (quoting Rev. Proc. 84–58 § 4.04) (internal quotation marks omitted).

The court in *Huskins* noted the government's citation of *VanCanagan,* but did not discuss the import that *VanCanagan* might have on the interpretation of Revenue Procedure 84–58. In *VanCanagan,* the Federal Circuit noted that the IRS has a specific procedure by which a taxpayer may make a deposit, namely Revenue Procedure 84–58.

*VanCanagan,* 231 F.3d at 1353. The Circuit held that where such a procedure exists, and the taxpayer declined to use it, that failure weighs against a finding that the remittance was a deposit. *Id.* ("There is no evidence, or even claim by the [plaintiffs], that they had made a notation on the $150,000 check itself to indicate that it was a deposit. The [plaintiffs] did not attempt to use the IRS procedure for making a deposit, which merely required the [plaintiffs] to designate in writing that the remittance was a deposit in the nature of a cash bond."). The Circuit treated this fact as one of the many facts and circumstances to be analyzed to determine whether a remittance was a payment or a deposit. *See id.*

Here, the plaintiff did not elect to use the deposit procedure and therefore under the Federal Circuit's holding in *VanCanagan,* discussed above, the court finds that Revenue Procedure 84–58 does not alter the court's analysis of the facts and circumstances.[9]

### D. The Plaintiff is Not Entitled to Recover Any Overpayments Made More Than Three Years Before His Request for a Refund.

The plaintiff acknowledges that should the court find, as it has, that the 1999 remittance was a payment of tax, the plaintiff is not entitled to recover any portion of that payment. Indeed, 26 U.S.C. § 6511 provides, "[T]he amount of the credit or refund shall not exceed the portion of the tax paid within the period, immediately preceding the filing of the claim, equal to 3 years plus the period of any extension of time for filing the return." 26 U.S.C. § 6511(b)(2)(A). It is undisputed that the plaintiff filed the estate tax

return on which he claimed an overpayment and sought a refund on September 6, 2006, well more than three years after his 1999 payment. *See* Def.'s Ex. 2. As such, the plaintiff is barred by 26 U.S.C. § 6511(b)(2)(A) from recovering any overpayment made in 1999.

## III. CONCLUSION

For the foregoing reasons, the defendant's motion for summary judgment is **GRANTED** and the plaintiff's motion for summary judgment is **DENIED.** The clerk is directed to enter judgment accordingly. Each party is to bear its own costs.

**IT IS SO ORDERED.**

---

9. For this reason, the court need not reach the parties' dispute regarding whether Revenue Procedure 84–58 § 4.04 applies only in the context of an audit, *see Gabelman v. Commissioner of Internal Revenue,* 86 F.3d 609, 613 (6th Cir. 1996), or whether it applies outside the context of an audit, *see Huskins,* 75 Fed.Cl. at 669. Since the plaintiff's remittance, this revenue rule has been amended to provide that to make a deposit a taxpayer must send with the remittance "a written statement designating the remittance as a deposit." Rev. Proc. 2005–18 § 4.01(1). Further § 4.01(2) now provides:

Except as provided in sections 4.04(1) [regarding audits] and 4.05(3) [in the context of overpayments after a notice of deficiency], a remittance that is not designated as a deposit (an "undesignated remittance") will be treated as a payment and applied by the Service against any outstanding liability for taxes, penalties or interest.

*Id.* § 4.01(2). Further, as noted above, Internal Revenue Code § 6603, enacted in 2004, now provides the statutory mechanism for making a deposit of tax.