**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 22-1091

FAISAL AHMED,
                              Appellant
v.

COMMISSIONER OF INTERNAL REVENUE

Appeal from the United States Tax Court
(IRS-1: 18-12876)
Tax Court Judge: Michael B. Thornton

Argued on November 17, 2022

Before: AMBRO[*], KRAUSE, and BIBAS, <u>Circuit Judges</u>

(Opinion Filed: April 7, 2023)

---

[*] Honorable Thomas L. Ambro assumed senior status on February 6, 2023.

Frank Agostino
Phillip Colasanto     [Argued]
Agostino & Associates
14 Washington Place
Hackensack, NJ 07601
            *Counsel for Appellant*

David Hubbert
Michael J. Haungs
Carl D. Wasserman   [Argued]
Tax Division
Department of Justice
950 Pennsylvania Avenue, N.W.
Post Office Box 502
Washington, D.C. 20044
            *Counsel for the Appellee*

---

OPINION OF THE COURT

---

AMBRO, Circuit Judge.

In 2017, the Internal Revenue Service (IRS) moved to penalize Faisal Ahmed for his company's delinquent trust fund taxes. It first attempted to notify Ahmed of its proposed penalties. Whether he received that notification is unclear. There is no doubt, however, that the IRS went ahead and assessed the penalties anyway. And when it later filed liens against his property to secure the penalties, Ahmed took note and

immediately sought Collection Due Process review with the IRS Independent Office of Appeals.

While Ahmed's petition for review was pending, he sent a large amount of money to the IRS along with instructions that it be treated as a "deposit" to freeze the running of interest on his disputed penalties. But rather than treat Ahmed's remittance as an interest-freezing deposit, the IRS applied it as a direct payment to his tax bill. That move, the IRS contends, brought a clean end to the matter. Without any remaining tax liability to dispute, the Tax Court dismissed Ahmed's petition as moot.

We now turn back the clock. Ahmed's petition was moot only if the IRS properly treated his remittance as a payment. That, in turn, depends on whether he sent money to the IRS after it validly assessed his penalties. Because we identify ambiguity in the record on this latter issue, we vacate the Tax Court's ruling and remand to the agency for further factfinding.

## I. BACKGROUND

### A. Aspen Construction's tax troubles

Ahmed, a New Jersey resident, was President of Aspen Construction Corporation. Like any employer, Aspen had to pay to the IRS withheld federal income, Social Security, and Medicare taxes from the wages of its employees—also known as "trust fund taxes" because they are "held to be a special fund in trust for the United States." *See* 26 U.S.C. § 7501; *see also id.* §§ 3102(a), 3402(a); *United States v. DeMuro*, 677 F.3d 550, 555 (3d Cir. 2012).

3

But Aspen did not do so. And it came to owe more than $600,000 in trust fund taxes to the IRS. Without any recourse against Aspen's individual employees (who were credited with withheld taxes when their net wages were paid), the IRS had two options: (1) pursue Aspen directly, *see* 26 U.S.C. § 3102(b), or (2) shift liability to Ahmed, who oversaw Aspen's finances as President. The agency chose the second option, authorized by § 6672 of the Internal Revenue Code.

## B. Section 6672 of the Internal Revenue Code

Section 6672's "basic purpose is the protection of governmental revenue." *Thomsen v. United States*, 887 F.2d 12, 17 (1st Cir. 1989). It was enacted by Congress to address concerns "that corporate employers might collect [trust fund] taxes and fail to pay them over" to the IRS. *In re Goldston*, 104 F.3d 1198, 1200 (10th Cir. 1997). Guarding against this delinquency, § 6672 authorizes the IRS to collect trust fund recovery penalties (TFRPs) from "responsible persons" at a company who willfully fail to pay over trust fund taxes. *See, e.g.*, *Kuznitsky v. United States*, 17 F.3d 1029, 1032 (7th Cir. 1994). A responsible person is "an officer or employee [who] . . . is under a duty" to "collect, account for, and pay over" the tax for an employer's trust fund tax withholding and remittance activities. 26 U.S.C. § 6671(b); *Kazmi v. Comm'r*, 123 T.C.M. (CCH) 1064, 2022 WL 601078, at *5 (2022). By targeting "responsible persons," § 6672 allows the IRS "to pierce the corporate veil and proceed against [the individuals] responsible for collecting the offending company's quarterly employment

taxes."[1] *United States v. Farr*, 536 F.3d 1174, 1177 (10th Cir. 2008).

TFRPs sought by the IRS must be "equal to the total amount of the unpaid taxes," *Brounstein v. United States*, 979 F.2d 952, 954 (3d Cir. 1992), and must generally be paid after notice and demand by the IRS if not in dispute, *see Kazmi*, 2022 WL 601078, at *4. They are "presumptively correct and the burden is on the taxpayer to overcome this presumption by countervailing proof."[2] *Psaty v. United States*, 442 F.2d 1154, 1161 n.13 (3d Cir. 1971) (addressing § 2707(a) of the Internal Revenue Code of 1939, the predecessor statute to § 6672).

Because holding an individual liable for a corporation's nonpayment of trust fund taxes is strong medicine, § 6672 implements procedural protections for taxpayers. One such protection is advance notice of a proposed TFRP when the IRS proceeds administratively: "No penalty shall be imposed [through administrative action] unless the Secretary notifies

---

[1] Although "[t]he United States is entitled to collect the non-remitted taxes only once," the IRS "need not attempt collections of the tax assessment from the corporate employer before asserting the personal liability of a responsible person." *Reph v. United States*, 615 F. Supp. 1236, 1242 (N.D. Ohio 1985). Moreover, there can be more than one "responsible person," in which case liability is joint and several for the entire amount not paid. *Id.* at 1241–42.

[2] In this way, personal liability under § 6672 differs from employer trust fund tax liability, which arises automatically as an incident of the payment of wages and salaries in the employment relationship. *See Kuznitsky*, 17 F.3d at 1032 (citing 26 U.S.C. § 3403).

the taxpayer in writing . . . or in person that [he or she] shall be subject to an assessment of such penalty." 26 U.S.C. § 6672(b)(1). Typically, the IRS satisfies § 6672(b)'s notice requirement by sending a "Letter 1153" that, among other things, details the way a taxpayer may challenge the IRS's proposed TFRPs. *See* 14A Mertens Law of Fed. Income Tax'n § 55:139; *see also, e.g.*, *Mason v. Comm'r*, 132 T.C. 301, 318 (2009). A Letter 1153 must be sent to the taxpayer's "last known address" at least 60 days before his TFRPs are assessed. *See Kazmi*, 2022 WL 601078, at *5; 26 U.S.C. § 6212; *see also* 26 C.F.R. § 301.6212-2 (defining "last known address"). Provided that occurs, the taxpayer need not actually receive it for a § 6672(b) notice to be valid. *See Bonaventura v. United States*, 2009 WL 6042178, at *2 (N.D. Ga. Dec. 14, 2009) (collecting cases), *aff'd*, 428 F. App'x 916 (11th Cir. 2011). And if, upon proper notice, a taxpayer does not challenge the IRS's proposed TFRPs or pay them within 60 days, the IRS may "definitively fix[]" liability through an assessment. *Cf. Baral v. United States*, 528 U.S. 431, 434–35 (2000); *see also, e.g.*, *Kazmi*, 2022 WL 601078, at *2; IRS Br. 7. If that is done, it may obtain a lien on the taxpayer's property. *Kazmi*, 2022 WL 601078, at *6 (citing 26 U.S.C. § 6321).

However, when the IRS fails at the outset to send a Letter 1153 to a taxpayer's last known address (or otherwise fails to provide a valid § 6672(b) notice), it may not later assess proposed TFRPs administratively—at least absent waiver by the

taxpayer[3] or a showing of inconsequential error.[4] *See, e.g.*, *United States v. Appelbaum*, 2016 WL 427944, at \*3–4 (W.D.N.C. Feb. 3, 2016); *United States v. Thomas*, 2014 WL 1758681, at \*3 (N.D. Fla. Mar. 20, 2014); *Bonaventura*, 2009 WL 6042178, at \*5; *Shaffran v. Comm'r*, 113 T.C.M. (CCH) 1153, 2017 WL 633785, at \*4 (2017); *cf. Riley v. United States*, 118 F.3d 1220, 1222 (8th Cir. 1997).[5] Although the IRS may

---

[3] "Section 6672 does not . . . restrict the traditional principles of waiver." *Moore v. United States*, 648 F.3d 634, 639–40 (8th Cir. 2011). A taxpayer may waive § 6672(b)'s protections by ratifying a Form 2751. *See United States v. Seidel*, 2008 WL 3822904, at \*7 (N.D. Cal. Aug. 13, 2008) (citing I.R.M. § 5.7.4.7(3)). Ahmed, however, did not sign a Form 2751. *See* App. 269–71.

[4] When the record makes clear that a misaddressed Letter 1153 has, in fact, reached a taxpayer or his last known address, a scrivener's error on the mailing will not unsettle the legal sufficiency of a § 6672(b) notice. The notice's aim is to protect taxpayers against government abuse of "summary collection methods" available to the IRS in administrative collection proceedings. *Cf. United States v. Jersey Shore State Bank*, 781 F.2d 974, 979–80 (3d Cir. 1986), *aff'd*, 479 U.S. 442 (1987). That purpose is served when taxpayers actually or constructively receive warning of proposed TFRPs. *See, e.g.*, *In re Chabrand*, 301 B.R. 468, 477 (Bankr. S.D. Tex. 2003); *Carlyle v. Comm'r*, 65 T.C.M. (CCH) 2457, 1993 WL 120348, at \*2 (1993); *Clodfelter v. Comm'r*, 57 T.C. 102, 107 (1971), *aff'd* 527 F.2d 754 (9th Cir. 1975).

[5] We note that "the IRS' failure to comply with § 6672(b) [does] not bar recovery of a tax liability or penalty in a civil action." *Bonaventura*, 2009 WL 6042178, at \*5; *see also Howell v. United States*, 164 F.3d 523, 526 n.4 (10th Cir. 1998)

7

also deliver notice of proposed TFRPs "in person," 26 U.S.C. § 6672(b)(1), it does not contend it did so in this case.

### C. The IRS's § 6672(b) notice to Ahmed

The IRS sent Ahmed a Letter 1153, but perhaps not to his last known address. The record is too inconsistent to say for sure. *See* App. 13 (Tax Court Op. 12 n.8) (observing that Ahmed's Letter 1153 and photocopied envelope list his street number as "5B" whereas the address Ahmed included on his Form 12153 lists his street number as "58," along with a different zip code); App. 384 (Ahmed Collection Due Process Supplement) (noting that "Taxpayer's address was improperly recorded," as his street number was listed as "5" rather than "5B."); Transcript of Oral Argument at 9 ("I know that in one of [the IRS's] records, they had [the street number as "5"] and another one they had 5B, 5B being the proper [street number].").  Adding to the confusion, Ahmed's Letter 1153 was returned to the IRS stamped "RETURN TO SENDER, UNCLAIMED, UNABLE TO FORWARD," App. 272, and

---

(citing *In re Goldston*, 104 F.3d at 1200) ("We have held, moreover, that the IRS may bring a judicial tax collection action even if an invalid assessment prevents it from attempting to collect taxes in an administrative proceeding."). In those cases, "the statutory notice provisions in [Section 6672(b)]" may be avoided because "the filing of a complaint and service of a summons provides the taxpayer with adequate notice of a potential tax liability." *Bonaventura*, 2009 WL 6042178, at *5 & n.1 (citing H.R. Rep. 104–506 at 39). In fact, "in the context of a civil trial, which requires service of process and discovery, the notice contemplated by § 6672(b) [does] not serve any real purpose other than to act as a penalty to the IRS." *Id.* at *5.

Ahmed stated in his declaration that he "does not remember ever receiving the notice required by section 6672(b)." App. 12–13 (Tax Court Op. at 11–12 & n.6). Finally, there is no indication that he ever received correspondence from the IRS at the address to which the Letter 1153 was mailed. *See* App. 104–05, 112 (showing that the IRS's other communications were sent to Ahmed's retained CPA).

**D. Subsequent Administrative Action and Proceedings**

After Ahmed failed to respond to his Letter 1153, the IRS filed Notices of Federal Tax Liens (NFTLs) against him. Those got Ahmed's attention, such that he requested and participated in a Collection Due Process hearing with the IRS Independent Office of Appeals. His efforts were too little, too late; the Commissioner issued a Notice of Determination in May 2018 sustaining the NFTLs.

Ahmed next petitioned the Tax Court for a review of the Notice of Determination. He claimed a host of procedural errors, including the IRS's failure to "provide verification that the requirements of any applicable law and/or procedure were satisfied." App. 42. After the IRS moved for summary judgment, the Tax Court sustained the Notice of Determination in part and remanded in part. It determined, among other things, that the agency's Settlement Officer had failed to verify properly that the IRS mailed notice of the proposed TFRPs to Ahmed's last known address per § 6672(b). The Court also determined (correctly) that it did not have jurisdiction to consider subsequent assessments for TFRPs the IRS made on April 11, 2019, after the agency's initial Notice of Determination. *See Ruesch v. Comm'r*, 805 F. App'x 12, 14 (2d Cir. 2020);

9

*Freije v. Comm'r*, 131 T.C. 1, 4–6 (2008), *aff'd*, 325 F. App'x 448 (7th Cir. 2009).

In May 2020, the IRS Independent Office of Appeals conducted a supplemental Collection Due Process hearing following the Tax Court's remand. But before the Office of Appeals could issue a new ruling, Ahmed remitted $625,000 to the United States Treasury accompanied by a letter from his counsel styling the amount as a "Deposit in the Nature of a Cash Bond Under IRC § 6603." App. 297. The letter stated that the amount should be treated as "a deposit . . . within the meaning of Rev. Proc. 2005-18," an IRS procedure pertaining to the treatment of remittances. App. 298. It requested that the IRS continue to verify that the agency had satisfied the conditions for assessment of the TFRP under Section 6672. And it made one thing especially clear: the remittance "should not be posted as a final payment to Taxpayer's account." *Id.*

The IRS did not heed Ahmed's instructions. It deemed him ineligible for a deposit under 26 U.S.C. § 6603 and treated his remittance as a payment of tax. It posted Ahmed's $625,000 in satisfaction of his TFRP liabilities on June 29, 2020, and released his liens soon thereafter. It then moved the Tax Court to dismiss his petition as moot.

Ahmed objected to the proposed dismissal of his petition before the Tax Court, arguing that his remittance was merely a deposit and that, in any event, he remained entitled to certain procedural verification requirements. The Tax Court disagreed. It found that the Collection Due Process statute, 26 U.S.C. § 6330, limited its jurisdiction "to reviewing whether the Commissioner's proposed collection activity is appropriate." App. 26 (Tax Court Op. 7). It also observed that "once

10

the Commissioner concedes there is no unpaid liability for a disputed year upon which a collection action could be based," a Collection Due Process proceeding is moot. *Id.* The Tax Court thus dismissed Ahmed's case for lack of jurisdiction. Ahmed timely appealed.[6]

## II. DISCUSSION

### A. If Ahmed's June 2020 remittance was a deposit rather than a payment, the case is not moot.

The IRS bears a heavy burden of establishing mootness. *See Duncan v. Governor of Virgin Islands*, 48 F.4th 195, 204–05 (3d Cir. 2022). It seems to acknowledge, as it must, that if Ahmed's June 2020 remittance was an interest-freezing deposit made pending the outcome of the Parties' litigation, his case is not moot. *See, e.g.*, IRS Br. 23 ("Taxpayer's case rests on the central premise that his collection due process suit is 'alive' because he merely 'deposited' the $625,000 with the Treasury rather than actually paying the tax."); *id.* at 16 ("[T]axpayer got the relief he sought when he paid his bill. Case closed. But taxpayer will not take 'yes' for an answer.").

The threshold question, then, is whether Ahmed's remittance was a deposit or a payment.

---

[6] We have jurisdiction under 26 U.S.C. § 7482(a).

**B. To distinguish a tax deposit from a payment of tax, we look primarily for statutory guidance before resorting to the common law.**

Historically, the common law served as the exclusive means by which courts classified taxpayer remittances like Ahmed's. The Supreme Court first recognized the concept of a "tax deposit" in 1945 in *Rosenman v. United States*, 323 U.S. 658, 662–63 (1945). When that case was decided, the Internal Revenue Code contained no deposit provisions. *See VanCanagan v. United States*, 231 F.3d 1349, 1352 (Fed. Cir. 2000). Following *Rosenman*, courts began to distinguish deposits from payments by "look[ing] to the facts and circumstances of an individual case . . . ." *Ertman v. United States*, 165 F.3d 204, 207 (2d Cir. 1999). This analytical framework developed gradually into the "facts and circumstances test." *See, e.g.*, *Moran v. United States*, 63 F.3d 663, 667–68 (7th Cir. 1995), *overruled on other grounds by Malachinski v. Comm'r*, 268 F.3d 497 (7th Cir. 2001); *Blatt v. United States*, 34 F.3d 252, 255 (4th Cir. 1994); *Cohen v. United States*, 995 F.2d 205, 208–09 (Fed. Cir. 1993); *Ameel v. United States*, 426 F.2d 1270, 1273 (6th Cir. 1970); *Fortugno v. Comm'r*, 353 F.2d 429, 435–36 (3d Cir. 1965); *Syring v. United States*, 2013 WL 4197143, at *3–7 (W.D. Wis. Aug. 15, 2013).

More than a half-century later, Congress began to enact provisions specifying situations in which taxpayers can (or cannot) suspend the running of interest on potential tax underpayments by paying a deposit. *See, e.g.*, American Jobs Creation Act of 2004, Pub. L. No. 108-357 § 842, 118 Stat. 1418, 1598 (codified as 26 U.S.C. § 6603). Where a statute classifies a remittance as a deposit (or payment), we must follow it. *See Ertman*, 165 F.3d at 207 ("We believe that in cases in which,

unlike *Rosenman*, the Internal Revenue Code explicitly defines a particular type of remittance as a payment [or deposit], a factual inquiry is unnecessary . . . , for in such cases the statutory delineation dominates over the circumstances of the particular remittance . . . ."). But when no statute governs, we apply the "facts and circumstances" test. *See id.*

### C. No statute governs definitively, so we must apply the common law "facts and circumstances" test to evaluate Ahmed's remittance.

Based on the spotty record before us, no statutory provision conclusively frames Ahmed's remittance as a deposit or a payment. Although Ahmed styled his remittance as a "Deposit in the Nature of a Cash Bond Under IRC § 6603," App. 297, that Section does not apply to TFRPs.[7] Alternatively, § 6672(c) permits a taxpayer to post a bond "within 30 days after the day on which notice and demand of [a TFRP] is made" to ensure that "no levy or proceeding in court for the collection of [TFRPs] shall be made, begun, or prosecuted . . . ." 26 U.S.C. § 6672(c).

But if Ahmed did not receive a § 6672(b) notice, then he had no opportunity to post a § 6672(c) bond, much less comply with the latter's procedural requirements. *See generally* 14A Mertens Law of Fed. Income Tax'n § 55:140. This case, then, is not one in which we are confident that "statutory delineation dominates over the circumstances of the particular remittance

---

[7] As the Tax Court recognized, "TFRP liabilities are imposed under [Section] 6672, which is in chapter 68 in subtitle F of the Code, rather than in any of the subtitles or chapters listed in [Section] 6603(a)." App. 28 (Tax Court Op. at 9 n.4).

13

at issue." *Ertman*, 165 F.3d at 207.  Hence we turn to the "facts and circumstances" test to account for the IRS's possible failure to send a valid Letter 1153.

### D. If the IRS failed to provide a § 6672(b) notice to Ahmed, he made a deposit, not a payment, under the "facts and circumstances" test.

There have been many statements of the facts and circumstances test in many jurisdictions.  In general, the test considers (1) "when the tax liability is defined" (*i.e.*, whether it had been assessed prior to remittance), (2) "the taxpayer's intent upon making the remittance," and (3) "how the IRS treats the remittance upon receipt." *Moran*, 63 F.3d at 668.  It also occasionally considers (4) whether the taxpayer contests liability when the remittance is made and (5) whether the remittance is "disorderly."[8] *See Boensel v. United States*, 99 Fed. Cl. 607, 612–13 (2011).

In a dispute like this one, where a taxpayer responds to a purported assessment with a remittance styled as a deposit, it strikes us that the taxpayer's intent will always conflict with the IRS's treatment of the remittance.  Likewise, we think it plain that a taxpayer contesting liability will invariably submit

---

[8] "[A] disorderly or random remittance (that is made by a taxpayer arbitrarily, without regard to an orderly, apparent, or reasonably possible ultimate tax liability, and that is made prior to any determination by respondent of the taxpayer's tax liability) will generally be regarded not as a payment of tax but as a mere deposit." *Risman v. Comm'r*, 100 T.C. 191, 198 (1992) (citing *N. Nat. Gas Co. v. United States*, 354 F.2d 310, 315 (Ct. Cl. 1965)); *Fortugno*, 353 F.2d at 435 (similar).

14

an orderly remittance that approximates the amount in controversy based on a "good faith estimate."[9] *See Huskins v. United States*, 75 Fed. Cl. 659, 673 (2007).

That leaves the decisive first factor: the timing of the assessment. On this point, the IRS contends that Ahmed's remittance was a payment because it was made "in response to a tax assessment . . . ." *See* IRS Br. 21. But Ahmed disagrees. Reply Br. 19 ("A valid assessment is a statutory prerequisite for collection of a tax liability and for treating a deposit as a payment . . . .").

As we have discussed, it is not apparent from the record that the IRS gave a legally sufficient § 6672(b) notice. There is thus a distinct possibility that Ahmed's remittance was made *pre*-assessment. In turn, the IRS has failed to carry its heavy burden of establishing mootness. *See Duncan*, 48 F.4th at 205. It cannot show that Ahmed's disputed liabilities were resolved properly.

**E. If the IRS provided a valid § 6672(b) notice to Ahmed, much of his case is moot.**

Importantly, ambiguity in the record can cut both ways. Much like we cannot conclude that Ahmed's disputed liabilities were resolved properly, we also cannot say for certain that

---

[9] After all, the purpose of a remittance like Ahmed's is to pause the running of interest on disputed penalties. It would make little sense in this scenario "simply [to] dump[] funds on the government in amounts which have no conceivable relationship to the temporarily undetermined liability . . . ." *N. Nat. Gas Co.*, 354 F.2d at 315–16.

15

the IRS was wrong to treat his remittance as a payment. If his Letter 1153 was sent to an appropriate address such that he received a valid § 6672(b) notice, *see supra* note 4, then the IRS did not err. That is true whether we apply the common law "facts and circumstances" test or view Ahmed's situation as "dominate[d]" by the statutory delineation of § 6672(c), which sets out procedural bond requirements Ahmed bypassed. *Ertman*, 165 F.3d at 207.

If Ahmed made a payment, his case is moot with one possible exception: he may be entitled to request an interest abatement under § 6404(h), which authorizes the Tax Court to review whether the IRS abused its discretion by failing to abate interest on a tax deficiency caused by its own "unreasonable error or delay." *See* 26 U.S.C. § 6404(e), (h). To be sure, Ahmed's petition to the Tax Court was filed under § 6330, which is designed to protect taxpayers from improper levies by providing them a Collection Due Process hearing.[10] But courts

---

[10] We identify no merit in Ahmed's challenges based on § 6330. *See McLane v. Comm'r*, 24 F.4th 316, 318–19 (4th Cir. 2022); *Greene-Thapedi v. Comm'r*, 126 T.C. 1, 6–7 (2006). We also agree with the IRS that Ahmed's lien withdrawal request is moot because the agency has already released his liens. *Cf. Jivani v. Comm'r*, 2018 WL 1660756, at *9 (T.C. Apr. 5, 2018) ("Where, as here, the taxpayer seeks withdrawal of a filed notice of Federal tax lien *and the notice has neither been withdrawn nor released*, the consideration of a filed notice of Federal tax lien is not moot merely because the taxpayer has paid the related tax liability.") (emphasis added). In fact, Ahmed received the relief he requested in his June 9, 2020 Letter: "Since taxpayer has remitted the deposit, he is requesting that the lien be withdrawn *or released* so that he can continue

---

have held that "a petition ostensibly filed under [§ 6330] can also be viewed as having been filed under section 6404(h)(1) if the taxpayer had raised the issue of interest abatement in his [Collection Due Process] hearing." *McLane v. Comm'r*, 116 T.C.M. (CCH) 277, 2018 WL 4350097, at \*10 (2018), *aff'd*, 24 F.4th 316 (4th Cir. 2022); *see also Wright v. Comm'r*, 571 F.3d 215, 220 (2d Cir. 2009).

The Tax Court offered no view on whether Ahmed raised the issue of interest abatement in his Collection Due Process hearing. If he did, the Tax Court had concurrent jurisdiction under § 6404 to consider his abatement claims and to issue an appropriate refund. *See McLane*, 2018 WL 4350097, at \*11; *see also* App. 94–95 (Collection Due Process Hearing Request). We leave this issue to the Tax Court to decide in the first instance (if necessary) after the status of Ahmed's remittance is resolved.

## III. CONCLUSION

The Internal Revenue Code sensibly implements procedural safeguards that channel the IRS's enormous power to proceed administratively to collect taxes. When those safeguards are set in sequence by statute, the IRS must take care not to skip steps. Given our concern that it may have done so with a deficient § 6672(b) notice, we vacate and remand to the Tax Court with instructions that the agency conduct further factfinding. If it reveals that the IRS's Letter 1153 to Ahmed fell short of § 6672(b)'s requirements, the Tax Court should treat his subsequent remittance as a deposit under the facts and

---

to obtain bonding for construction projects." App. 299 (emphasis added).

circumstances test and resolve his challenges on the merits. Alternatively, if Ahmed received proper § 6672(b) notice, the Tax Court should consider whether he may seek interest abatement under § 6404.